## CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF SOUTH CAROLINA.

Justices of the Supreme Court during the Period comprised in this Volume.

Hon. WILLIAM D. SIMPSON, CHIEF JUSTICE.
Hon. HENRY McIVER, ASSOCIATE JUSTICE.
Hon. SAMUEL McGOWAN, "        "

### FLOYD v. PERRIN.

1. An act of the legislature incorporated a railroad company, authorized certain townships to subscribe to the capital stock of such company, upon prescribed conditions, and incorporated these townships "for the purpose of this act." *Held,* that the act related to but one subject, which was expressed in the title—"An act to incorporate the G. & P. R. R. Co."—and that these townships were incorporated. Mr. JUSTICE McIver, *dubitante.*

2. But as the constitution of this State declares that "the corporate authorities of * * townships * * may be vested with power to assess and collect taxes for corporate purposes;" and as, neither in this act, nor in any other act, is any duty imposed upon these townships, or right given to them, except to subscribe to this railroad and to assess taxes to pay this subscription, the townships are without any corporate purpose, and therefore the power to assess a tax to pay this sub-

scription is violative of this constitutional provision. Art. IX., § 8.
Mr. Justice McGowan, *dissenting.*

3.  This act having declared the county commissioners to be the corporate
    agents of the townships in the matter of the election, subscription,
    payment of interest, &c., the county commissioners were not, in these
    matters, constituted a court before whom the tax-payers must, in the
    first instance. object to the constitutionality of the act, or be thereafter
    estopped from raising the question.
4.  Petition for rehearing refused.


Before NORTON, J., Abbeville, February, 1888.


The appeal came to this court from the following decree:

This action was begun by the plaintiffs on February 23, 1887,
under.section 268 of the General Statutes, to recover three hun-
dred dollars and five cents of taxes paid by the plaintiffs under
protest, to meet the interest on the bonds issued by the county
commissioners of said county as corporate agents of Ninety-Six
Township under the provisions of an act entitled "An act to char-
ter the Greenville and Port Royal Railroad Company," passed
December 23, 1882; and of an act entitled "An act to amend an
act entitled 'An act to charter the Greenville and Port Royal Rail-
road Company,'" passed December 24, 1885, which tax plaintiffs
allege has been illegally assessed and collected, because 1st. Sun-
dry of the conditions precedent to the issuing of the bonds have
not been performed; 2nd. The railroad company has located its
line in a direction not authorized and has thereby forfeited its char-
ter.    And 3rd. The act authorizing the subscription is in viola-
tion of article 2, section 20, and article 9, section 8, of the Con-
stitution of this State; and ask judgment, declaring the said act
and amendment unconstitutional, the assessment thereunder ille-
gal, and for the repayment of the sums paid by the plaintiffs
thereunder.    The defendant alleges that all of the conditions pre-
cedent to the issuing of the bonds were duly performed, and
pleads *res judicata* as to the validity of the bonds.

It is well settled that in the hands of an innocent holder, the
recitation in the bonds of the performance of conditions precedent
is binding on the tax payers liable to their payment, but that in
the hands of persons with notice, the performance of conditions

precedent may be inquired into.   The defendant is entitled to
whatever defence the holders of the bonds could make.   The
bondholders not having been made defendants, the burden of the
proof is upon plaintiffs to show that the tax should not be collect-
ed.   In the absence of evidence, I must assume that the bonds
recite the performance of all the conditions precedent to their
issue and are in the hands of innocent holders.   The plaintiffs
are therefore estopped from showing that the conditions precedent
have not been performed.

They are not estopped from contesting the validity of the bonds
on other grounds.   The charter of the railroad company can be
declared forfeited only by proceedings directly instituted for that
purpose.   Plaintiffs therefore fail on that ground.   The act under
consideration being to charter a railroad company, also gives
power to counties, townships, &c., to subscribe to its stock in a
certain way, and enacts that for the purposes of the act, town-
ships "shall be, and they are hereby, declared to be, bodies poli-
tic and corporate, and vested with the necessary powers to carry
out the provisions of this act."   Authority establishes the valid-
ity of the act as to municipal corporations already in existence,
such as counties, cities, &c.   The questions therefore seem to be,
1st. Is a township a municipal corporation ?   2nd. If a town-
ship be not a corporation, is its creation so foreign to the title of
the act under consideration as to be considered a distinct subject ?
3rd.   If a township be a municipal corporation, is a subscription
to a railroad company a township corporate purpose ?

Municipal corporations are the inhabitants of small territorial
subdivisions of the State, invested with subordinate local admin-
istration of their own affairs.   By the act of September 26, 1868,
townships were incorporated with the power, among numerous
others, to grant and vote moneys for making highways.   This
act was repealed by act of January 19, 1870 (14 Stat., 313), and
townships were deprived of all corporate power, but the names
and boundaries were preserved—presumably because such names
and boundaries had been generally adopted as assessment and
school districts under other statutes, which conferred no powers
upon the organization as townships, though in the former they
were mere geographical lines for convenience in assessing and

collecting taxes; and in the latter possessed of corporate powers by law for school purposes alone. *Gen. Stat.*, § 1008. I conclude that a township is not a corporation.

The title of the act relates only to the incorporation of the railroad company, but its general purpose being to provide for the construction of the railroad, it has been authoritatively held that any subject germane to the object is sufficiently embraced within the title, without making the title a general index; thus giving authority to a county to subscribe to a railroad company, which without such authorization could not do so, is embraced within a general title to incorporate that railroad, because a railroad is a highway, the building of which is as much within the general scope of the corporate powers of a county as the construction of other highways (legislative authority being necessary to legalize a tax for the latter), and the authority to subscribe was merely in furtherance of the object of the act. A township not being a corporation, the present act goes a step further and creates a corporation with the sole power and for the sole purpose of enabling it to subscribe to the stock of another corporation. That further step renders it obnoxious to article 2, section 20, Constitution of South Carolina, in that it relates to the creation of two separate and distinct corporations, only one being mentioned in the title.

But as this conclusion will doubtless be controverted, let us see whether, if not obnoxious to that provision of the constitution, the act be not rendered void by article 9, section 8, Constitution of South Carolina, which authorizes the legislature to vest the corporate authorities of townships, &c., with power to assess and collect taxes for corporate purposes. All the authorities agree that townships, &c., by reason of this provision of the constitution, may not be vested with power to assess and collect taxes for any other than a corporate purpose. Townships in this State have no corporate purpose—no corporate existence. The act under consideration does not purport to give Ninety-Six Township any corporate existence or purpose, except to subscribe to that railroad company. If it had failed to subscribe, it would have been as lifeless as if it had not been referred to by description in the act. By the act it does not become such a township

as may be vested with power to subscribe to the railroad company. It is not a township within the meaning of article 9, section 8, of the Constitution of South Carolina. And the purpose is not a corporate purpose within the meaning of that constitutional provision. *Weightman* v. *Clark*, 103 U. S., 256, is analogous.

It is ordered, decreed, and adjudged, that the acts of the legislature entitled respectively "An act to charter the Greenville and Port Royal Railroad Company," and "An act to amend an act entitled 'An act to charter the Greenville and Port Royal Railroad Company,'" are unconstitutional and void, so far as they purport to authorize townships to subscribe to the capital stock of said railroad company; and also so far as they purport to incorporate any township or townships; that the tax assessed, levied, and collected to pay the interest on the bonds issued in behalf of the Township of Ninety-Six was illegal. And I do certify that the taxes hereinafter enumerated, upon a trial upon the merits, were found to have been illegally and wrongfully collected, and ought to be refunded to the following named persons respectively. * * *

The defendant appealed upon the following exceptions:

I. Because the Circuit Judge erred in holding that the acts of the legislature entitled respectively, "An act to charter the Greenville and Port Royal Railroad Company," and "An act to amend an act entitled 'An act to charter the Greenville and Port Royal Railroad Company,'" are unconstitutional and void in so far as they purport to authorize townships to subscribe to the capital stock of said railroad company.

II. Because the Circuit Judge erred in holding that said acts are unconstitutional and void in so far as they purport to incorporate any township or townships.

III. Because the Circuit Judge erred in holding that the tax assessed, levied, and collected to pay the interest on the bonds issued on behalf of the township of Ninety-Six was illegal.

IV. Because the Circuit Judge erred in holding that the said acts are obnoxious to article 2, section 20, of the Constitution of South Carolina, in that they each relate to the creation of two

separate and distinct corporations, only one being mentioned in the title.

V. Because the Circuit Judge erred in holding that Ninety-Six Township is not a township within the meaning of article 9, section 8, of the Constitution of South Carolina.

VI. Because the Circuit Judge erred in holding that the purpose for which the tax was voted and levied is not a corporate purpose within the meaning of article 9, section 8, of said Constitution.

VII. Because the Circuit Judge erred in decreeing that the taxes paid by plaintiffs were illegally and wrongfully collected and ought to be refunded.

The plaintiffs also appealed, but as their exceptions were not considered, they need not be stated.

*Mr. W. C. Benet,* for defendant (upon the points considered by this court). The question of jurisdiction can be raised at any stage of a case. 24 *S. C.*, 122. The Circuit Court had no jurisdiction of this cause, because no appeal was taken by plaintiffs from the decision of the county commissioners when they passed upon the petition, rendered their decision, and ordered the election. *Const. of S. C.*, art. IV., §§ 15, 19 ; 24 *S. C.*, 546; 16 *Id.*, 251; *Charter of the Company.* From this decision there was no appeal.

A township in this State may be vested with power to subscribe to a railway company. The act repealing the act that incorporated townships, left the townships in existence as political divisions; and they are recognized as such in section 8, of article IX., of the Constitution, and in section 17 of the same article. It was not necessary to be invested with general corporate powers, such as are conferred upon a city, or town, or other self-contained and autonomous municipality. As the act incorporating the railroad company plainly declares, the township was declared to be a body politic and corporate for one purpose only, namely, to vote a subscription to the capital stock of the railway company, and for this purpose the county commissioners were made its corporate agents. For one purpose only was Ninety-Six Township thus incorporated. It was not made a corporation

with the usual and ample corporate powers.   But it existed as a political division recognized by the constitution of 1868; it had the power conferred upon it by the act in question to incur a bonded debt; being invested with this power, it became by implication a corporation, with powers to do the thing authorized.   This is the doctrine of *Brown* v. *C. & L. R. R. Co.*, 13 S. C., 290.

The tax in this case was for a corporate purpose.   13 *S. C.*, 290.   And what constitutes a corporate purpose in a county will be a corporate purpose in a township.   9 *Humph.*, 252; 1 *Sneed*, 62; 24 *Ill.*, 88; 42 *Id.*, 9; 18 *Minn.*, 492; 2 *Neb.*, 377; 1 *Dill. Mun. Corp.* (3rd edit.), 179, note 1; 10 *Rich.*, 491. *Weightman* v. *Clark* (103 U. S., 256) only holds that aid to a railroad is not within the corporate purposes of a township organized only for school purposes.   The analogy between that case and this is far from perfect.   See, further, 1 *Dill. Mun. Corp.*, §§ 153, 158; 23 *S. C.*, 64, 427.

The incorporation of townships is not a new subject introduced into the act, and different from that expressed in the title.   *Const.*, art. II., § 20; *Sedg. Stat. & Const. L.*, 367, 567; *Barr. Obs. Stat.*, 449; *Cool. Const. Lim.*, 143; 1 *Seld.*, 285; 4 *Id.*, 241; 18 *Barb.*, 640; 11 *Texas*, 673; 32 *Id.*, 405; 34 *Id.*, 49; 4 *La. Ann.*, 298; 4 *Cal.*, 388; 4 *S. C.*, 430; 18 *Id.*, 464; 19 *Id.*, 116; 23 *Id.*, 427.

*Messrs. Wells & Orr, W. T. Gary*, and *J. F. J. Caldwell*, same side.

*Messrs. S. McG. Simkins* and *W. W. Butler*, contra.

November 30, 1888.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   This case primarily involves the constitutionality of an act entitled "An act to charter the Greenville and Port Royal Railroad Company," passed December 23, 1882, and of "An act to amend an act entitled 'An act to charter the Greenville and Port Royal Railroad Company,'" passed December 24, 1885.   In the body of the act power is given to counties and townships, &c., to subscribe to the stock of the company thereby chartered, and it enacts that for the pur-

pose of the act "townships shall be, and they are hereby declared to be, bodies politic and corporate, and vested with the necessary powers to carry out the provisions of this act." Under the provisions of this act a township known as Ninety-Six Township, in Abbeville County, subscribed to the stock of said company—the county commissioners as the corporate agents of said township issuing the necessary bonds in payment of said subscription, to meet the interest of which bonds a tax was assessed and collected by the defendant, treasurer of the county.

The action below was brought by the plaintiffs, tax-payers of said township, under section 268, General Statutes, to recover the amount paid by them under protest, to wit, $300.05. Their claim to recover is based mainly upon two propositions involving, as we have said, the constitutionality of the enactment above referred to, to wit: It is claimed, first, that the act in question, with its amendments, in so far as it purports to incorporate any township or townships in the body of said act, and not mentioned in the title, is in violation of that section of the Constitution which declares that "Every act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title." Art. II., § 20. Second, it is claimed that the act violates section 8, of article IX., of the Constitution, which impliedly inhibits the legislature from vesting the corporate authorities of counties, townships, &c., with the power to assess and collect taxes for any purpose other than a corporate purpose, and it is denied that the subscription in question by Ninety-Six Township, and the tax collected thereunder, was for a corporate purpose.

Now assuming, in the first instance, that the subscription by Ninety-Six Township to the Greenville and Port Royal Railroad Company was within its corporate purpose, and therefore if said township had been incorporated and vested with power to assess and collect a tax to meet such subscription by a separate act, expressed in its title, such act would not be obnoxious to article IX., section 8, of the Constitution; yet the question still is presented, whether the incorporation of this township with the power mentioned in the body of the act, which in its title refers only to the chartering of the railroad company, is not obnoxious to sec-

tion 20, article II., *supra*, because, as alleged, it refers to a subject distinct and foreign to that expressed in the title. His honor, the Circuit Judge, held and ruled that the act was unconstitutional in both particulars.

This court has several times considered and discussed section 20, article II., *supra*, notably in the cases of *Charleston* v. *Oliver*, 16 S. C., 47; *Coleman* v. *Chester*, 18 *Id.*, 464; *Woodsides* v. *McDaniel*, 19 *Id.*, 116; and *Connor* v. *Railroad Company*, 23 *Id.*, 427. In some of these cases, the principle under which the section should be construed and applied was announced. In *Charleston* v. *Oliver*, while holding the act under review unconstitutional, because, in the judgment of the court, it was in violation of the section, the court said : "We think there has been and ought to be a general disposition to give a liberal construction to constitutional provisions like this now under consideration, rather than to embarrass legislation by an unnecessary strictness of construction (*Cool. Const. Lim.*, 146); and we fully agree with the Supreme Court of the United States, where (*San Antonio* v. *Mehaffey*, 96 U. S., 315, adopting the language of the Texas court in *San Antonio* v. *Lane*, 32 Texas, 405) it holds that "when an act of the legislature expresses in its title the object of the act, the title embraces and expresses any lawful means to achieve the object, thus fulfilling the constitutional injunction that every law shall embrace but one subject, and that shall be expressed in its title." In *Coleman* v. *Chester*, *supra*, the court said: "This section, no doubt, contains a wise provision, and, if properly observed, would tend greatly to prevent confusion and doubt as to the exact meaning and intent of legislative enactments, and to this end it should be enforced by the court in all proper cases, due care being exercised lest a too strict construction might defeat its very object and purpose by clogging legislation and loading down our statute books with numberless separate acts, and wholly unnecessary to the end," etc.

These two cases and others show the spirit in which this court has been disposed to consider this section. And under the influence of this spirit, in *Connor* v. *Railroad Company*, *supra*, where, in "An act to incorporate the Green Pond, Walterboro and Branchville Railroad Company," power was conferred upon

the county commissioners to issue bonds in subscription to the capital stock of this railway, the court said: "As we have said in *Charleston* v. *Oliver*, 16 S. C., 561, upon the authority of Mr. Justice Cooley, 'There has been and ought to be a general disposition to give a liberal construction to constitutional provisions like this now under consideration, rather than to embarrass legislation by an unnecessary strictness of construction.' Hence, when a question under this clause of the constitution is presented for adjudication, we are bound to take a liberal and enlarged view, and, if practicable, bring the legislation which is assailed as unconstitutional within the limits prescribed by the supreme law of the land." And in this case the section assailed was held constitutional on the ground that it contributed to the object expressed in the title, and could be properly regarded as a lawful means to achieve that object, to wit, the incorporation and construction of the Green Pond, Walterboro & Branchville Railroad Company.

Now, applying these principles announced from our own court, and especially the decision in the last case, we think the Circuit Judge was in error in holding the acts here unconstitutional because of section 20, article II., Constitution. The only difference between *Connor* v. *Railroad Company*, *supra*, and the case before the court (assuming for the present that Ninety-Six Township had a corporate purpose, and therefore capable of being invested with the power to subscribe and tax, to the end of carrying out said corporate purpose), was the fact that Colleton County was already a corporate body, with a corporate purpose, at the time the Green Pond Railroad Company was chartered, while in the latter case Ninety-Six Township was incorporated by the acts chartering the railroad. We cannot see that this difference affects the question. The principle upon which it was held, in the first case, that the act was constitutional, was that the authority granted to the county to subscribe to the railway was a means to achieve the object expressed in the title of the act, and therefore was germane to that object. So it appears to us that declaring the township a corporate body, with power to tax in aid of the Greenville and Port Royal Railroad, was contributory to and furnished means to achieve the object of the act as expressed in

the title, assuming all the time that Ninety-Six Township was really incorporated, with a corporate purpose, and that the power conferred was intended to promote that corporate purpose.

This brings us to this latter question, which, as it appears to us, is the main and vital question in the case, to wit: Was Ninety-Six Township incorporated with a distinct corporate purpose, and was the power to subscribe to the railroad in question, and to assess and collect a tax to meet such subscription, granted with a view to enable it to carry out said corporate purpose, and thus conform to section 8, article IX., Constitution, in which it is provided: "The corporate authorities of counties, townships, school districts, cities, towns, and villages may be vested with power to assess and collect taxes for corporate purposes," &c., &c.

It will be conceded that at the time of the passage of the act chartering the Greenville and Port Royal Railroad Company, Ninety-Six Township was not a corporate body, nor was there any other corporate township. It is true that under an act of the legislature passed in 1868, the counties of the State were divided into townships, which were declared to be corporate bodies, with corporate purposes, and with powers and privileges conferred, and to be organized with various officials, moderators, town clerks, selectmen, constables, &c., &c., and with all the machinery of a regular corporation; but this act was repealed in 1870, by "An act to repeal an act entitled 'An act to organize townships and to define their powers and privileges,' " excepting, however, that portion of said act fixing the number, names, and boundaries of the respective townships in the respective counties, which were left as territorial divisions, but with no corporate powers, privileges, or purposes.

Has Ninety-Six Township been incorporated with a corporate purpose, sufficiently so as to authorize its being invested with the power to assess and collect taxes in aid thereof? Section 9 of the charter of the railroad provides that, for the purpose of this act, all the counties and townships in said counties along the line of said railroad, or which are interested in its construction, as herein provided for, shall be, and they are hereby declared to be, bodies politic and corporate, and vested with the necessary powers to carry out the provisions of this act," &c., &c. Ninety-Six

Township is along the line of said railroad, and in so far as section 9 above has incorporated any township, Ninety-Six is included. But these incorporations are rather singular bodies. No machinery is provided for their organization; they have no officials, no perpetual succession, nothing, in fact, usually belonging and appertaining to corporate bodies, either public or private, municipal or otherwise. Inasmuch, however, as the general assembly has declared them in express words to be bodies politic and corporate, they must be so held here ; but where is the corporate purpose upon which, and for the promotion of which, the legislature is authorized by section 8, article IX., Constitution, to grant power to tax the property in said townships by a majority vote of the inhabitants ?

To understand what is meant by a corporate purpose, a distinction must be drawn between the power of a corporation and the end and the purpose intended to be accomplished by it. The two must not be confounded. To illustrate : the counties of the State are corporations, with well defined and distinct purposes, to wit, supervision of roads, bridges, and ferries, and other internal and county matters ; and to carry out these ends certain powers are granted, which are distinct and separate from the ends. So, too, municipal governments are provided for cities, towns, and villages, for the purpose of enabling them to preserve peace and order, to construct and repair streets, and for various other corporate objects ; and to enable these governments to meet the ends designated certain powers are granted, but these powers and the corporate purposes are widely different. True, the one follows the other, and is necessary thereto, but the corporate purpose must exist before a power can be granted to carry it out.

Now, these townships, after being declared bodies politic and corporate, were authorized to subscribe to the railroad upon a vote of the inhabitants, said subscription to be paid by taxation. But we again ask, for what corporate end and purpose was this power granted ? What matter did the township, after its incorporation, have charge of, the promotion of which was intended by this subscription ? What corporate interest did it control, demanding the taxing power for its advancement ? We can see nothing. It was given power to take stock in the railroad, but

for what end, in so far as the township is concerned? Suppose this stock should become largely remunerative, in the way of dividends, in what manner and for what purposes could it be used? These are questions to which the act incorporating the township affords no reply.

The case referred to by his honor, the Circuit Judge, and also by the counsel, *Weightman* v. *Clark*, 103 U. S., 256, 261, presents a striking example of the difference between the powers granted and a corporate purpose, where a school district in Illinois was authorized to subscribe to the capital stock of a railway company; and the case reaching the Supreme Court of the United States, Chief Justice Waite, in delivering the opinion of the court, said: "Taxation by municipal or public corporations must be for a corporate purpose. It is not always easy to decide whether a certain kind of tax is within or without this limitation, but we think it may be safely said that, as a general rule, a corporate purpose must be some purpose which is germane to the general scope of the object for which the corporation was created. * * * Taxation for school purposes only would be germane to such corporations, to wit, school districts." The Illinois act was declared unconstitutional. So, in the case before this court, while we see a distinct power granted to these incorporated townships, we are at a loss to find a corporate purpose to which the power can be said to be germane, and which it is intended to advance and promote by the exercise of said power.

It is conceded that in this State, and in the other States having a constitutional provision similar to ours, by which counties, &c., &c., may be invested with power to subscribe to railroads, &c., &c., and to tax the inhabitants to meet such subscription, that it is constitutional for the legislature to grant such power to the counties; but this is based upon the position that railroads being highways, are embraced within the corporate purposes of the counties, which have jurisdiction over highways, bridges, and ferries, with other matters appertaining to the counties. The townships, however, have no such jurisdiction, and therefore the cases relied on in the argument, in which county subscriptions to railroads have been held legal have no application, because in all such cases the subscription and taxation were intended to pro-

mote and advance a strictly corporate purpose of the county, which is not the fact as to townships.

We would very gladly have come to a different conclusion from that which has been reached in this case, because of the serious effect which this judgment may have; but after patient and mature consideration. we feel compelled to hold with the Circuit Judge that, in so far as the acts in question attempted to confer power upon townships along the line of the railroad, embracing Ninety-Six Township, it was in violation of section 8, article IX., of the Constitution, and therefore void.

From the view which we have taken of this case, it is not necessary to consider the plaintiffs' (respondents') grounds of appeal, which impute error to the Circuit Judge in holding as matter of law that plaintiffs were estopped from showing that the conditions precedent to the issue of the bonds, &c., had not been complied with, &c.

We do not think there is anything in the defendant's ground of appeal as to the jurisdiction of the court, in so far, at least, as the right of plaintiffs' recovery was based upon the illegality of the tax, because of the unconstitutionality of the act under which it has been imposed. The duty performed by the county commissioners was not one of those duties which appertained to the county commissioners as a constitutional body, having jurisdiction over roads, highways, ferries, and bridges, and in all other matters relating to taxes, disbursement of money for county purposes, with the right of appeal in all cases to the State courts. Nor was said duty imposed of necessity upon said commissioners on account of said jurisdiction. On the contrary, the county commissioners were simply declared the corporate agents of the townships, and as said agents invested with authority to order the election and issue the bonds upon certain conditions, and, as we suppose, any one else might have been declared the agents as well. Under these circumstances we do not think the county commissioners constituted a court in this matter as in matters belonging to their legal jurisdiction, before which it was incumbent upon the plaintiffs as taxpayers to raise the question of the constitutionality of the acts mentioned, at the peril of being estopped from bringing the action below to test the legality of

the tax, under the act in such case especially made and provided, as they have done.

It is the judgment of this court, that the judgment of the Circuit Court holding the acts in question unconstitutional on account of the absence of a corporate purpose in the townships incorporated, and that therefore the tax assessed and collected by the defendant was illegal and should be refunded, should be affirmed and the same is hereby affirmed.

MR. JUSTICE McIVER. I concur fully with the Chief Justice that the act in question is unconstitutional, for the very satisfactory reasons presented in his opinion; and although conscious that I can add nothing to the strength of his reasoning, yet in view of the grave issues and important consequences involved in the case, it has been deemed proper that each member of the court should express his views.

The people in their sovereign capacity have, by their constitution, entrusted the taxing power to the general assembly, and, upon a familiar principle, this power thus delegated to that body, cannot be delegated by it to any subordinate agency, except by express permission of the sovereign authority. The framers of the constitution, recognizing this doctrine, provided that this high power of taxation might be delegated to *certain* subordinate agencies for *certain* purposes, for we find it declared in section 8 of article IX.: "The corporate authorities of counties, townships, school districts, cities, towns, and villages may be vested with power to assess and collect taxes for corporate purposes," &c. It is clear, therefore, that this provision is, as is said by Waite, C. J., in *Weightman* v. *Clark*, 103 U. S., 259, in speaking of a similar provision in the constitution of Illinois, "a limitation on the power of the legislature to authorize taxation by public corporations."

When, therefore, a question arises as to the constitutionality of an act purporting to delegate the taxing power to some subordinate agency of the government, two inquiries are presented: 1st. Whether such agency is one of those to which the constitution permits the taxing power to be delegated. 2nd. Whether the taxation purporting to be authorized is for a corporate pur-

pose; for, as we have seen, this power can only be delegated to the corporate authorities of counties, townships, &c., and only for corporate purposes. This necessarily implies that there must be a corporation, with corporate authorities, created for certain corporate purposes. So that the practical inquiries in this case are: 1st. Whether Ninety-Six Township is a corporation, furnished with corporate authorities; and if so, 2nd. Whether the power to tax which the act purports to confer upon such corporate authorities is for a corporate purpose.

As to the first question, there can be no doubt of the power of the general assembly to erect the inhabitants of Ninety-Six Township into a corporation for any legitimate purpose, and assuming, for the purposes of this case, that this has been done by the act in question (though the indefinite terms of the act—"that, for the purpose of this act, all the counties and townships in said counties, *along the line of said railroad,* or which are *interested in the construction as herein provided* for," shall be bodies politic and corporate—might leave that matter in some doubt); and assuming further that the provision of the act declaring the county commissioners of the respective counties to be the corporate agents of the counties or townships so incorporated, would be sufficient to constitute the county commissioners of Abbeville County "the corporate authorities" of Ninety-Six Township within the meaning of the constitution, the important inquiry remains, whether the taxing power which the act purports to confer upon Ninety-Six Township is for a corporate purpose.

It is very clear to my mind that, under a proper construction of section 8, article IX., of the Constitution, above quoted, that the taxing power cannot be delegated to any of the subordinate agencies therein named, except for a corporate purpose. The manifest meaning of this section of the constitution is, that this high power can only be delegated to these subordinate agencies for the purpose of aiding or promoting the objects for which they have been erected into corporations. This necessarily implies that there must first be a corporation, with certain corporate purposes, and when the taxing power is claimed, it must be shown that it was conferred for the purpose of aiding or promoting some one or more of such corporate purposes. I do not mean to say

that the corporation must be created by some previous act, defining its powers and purposes before any act can be constitutionally passed, investing such corporation with the taxing power; but I do mean to say that the power to tax is dependent upon the existence of some corporate purpose to which the proceeds of the tax may be applied; though all this may be done in one and the same act—the corporation may be created, endowed with specified powers to effect certain corporate purposes, and in the same act the corporation may properly be invested with the power to levy taxes to promote such corporate purposes. For example, I see no reason why the general assembly may not have created the Township of Ninety-Six a corporation for school purposes, and in the same act conferred the power to levy taxes for such purposes. So, too, perhaps the general assembly, but for the fact that the constitution, section 19, article IV., has clothed the county commissioners with jurisdiction over roads, highways, &c., might have passed an act creating the Township of Ninety-Six a corporation and invested it with the control and management of highways, and as promotive of that corporate purpose might have invested it with power to levy taxes to aid in the construction of a railroad, upon the doctrine which, after much conflict of opinion, seems to be settled, that a railroad is a highway and therefore a municipal corporation, charged with the supervision and control of highways, may be invested with power to aid in its construction. But the act in question does not purport to have either of these objects in view. It simply erects the several townships along the line of the proposed railroad into corporations without any corporate purposes whatever, and only purports to confer upon them the single power of subscribing to the stock of this particular railroad.

Now, it cannot be denied that the power to subscribe to the capital stock of this railway company necessarily involves the power to levy taxes to pay such subscription, as it is not pretended that the townships have any other means of raising the money necessary for that purpose. *Loan Association* v. *Topeka*, 20 Wall., 655; *Feldman & Co.* v. *City Council*, 23 S. C., 57. If this be so, then to say that the subscription to the capital stock of the company is the corporate purpose for which the taxing

2—30

power is conferred, would be to assume the very point in issue; for that would be simply asserting in another form the affirmative of the proposition to be proved. The same mode of reasoning would necessarily lead to the conclusion that the general assembly has the power to invest the corporate authorities of *any* of the subordinate governmental agencies mentioned in section 8, article IX., of the Constitution, with the power to subscribe to railroads, together with its necessary incident—to levy taxes to pay such subscriptions; but it has been decided by the highest judicial authority in this country, in the case of *Weightman* v. *Clark, supra,* that a township erected into a corporation for school purposes cannot, under the constitution of Illinois, which in this respect is practically identical with ours, be invested with power to subscribe to a railroad. The reasoning of Chief Justice Waite in that case applies with equal force to the question now under consideration. The object of the constitutional provision is to limit the power of the legislature to authorize taxation by public corporations, by restricting it to taxation for a corporate purpose, which must be some purpose germane to the objects of the corporation; and it is very manifest that if the legislature can, by simply authorizing a corporation to subscribe to a railroad, acquire the right to invest such corporation with the taxing power, then the constitutional provision would lose its limiting force, for in every instance it could be evaded.

The cases which seem to be mainly relied upon by appellant are *Brown* v. *County of Hertford,* 100 N. C., 92, decided recently by the Supreme Court of North Carolina and reported in 5 S. E. Rep., 178, and *Harter* v. *Kernochan,* 103 U. S., 562. It does not appear from the former case that there is in the North Carolina constitution any such provision as that found in section 8, article IX., of our Constitution, upon which the view herein presented rests, and hence it is difficult to perceive how that case can be any authority upon the question here involved. A careful examination of the other case, which went up to the Supreme Court of the United States from the State of Illinois, will show that the question now under consideration was not one of the points decided in that case; the main controversy there being whether, after the people of the township had voted for a *dona-*

*tion* to the railroad company to be raised by *a special tax*, the township could be afterwards authorized *to issue bonds* for the amount so donated, without submitting the proposition again to be voted upon.

It is true that in discussing that question, Mr. Justice Harlan does use the following language, quoted in the argument in this case: "That (the donation to the railroad), it must be conceded, was a corporate purpose, within the meaning of the constitution, *as interpreted by the State court;*" but from the language used by the same justice in the case of *County of Livingston* v. *Darlington*, 101 U. S., at page 417, it is very doubtful whether the Supreme Court of the United States would place the same interpretation upon the constitution of that State. After considering the question whether an act authorizing a county to subscribe money for the purpose of establishing a State reform school within its limits was constitutional, and after reviewing the Illinois decisions upon the construction of that clause in the constitution of that State, similar to ours, limiting the power of the legislature to vest subordinate agencies of the government with the taxing power, and showing that those decisions had been far from uniform, he says: "We express no opinion as to what, in our judgment, is the true exposition of those parts of the Illinois constitution to which reference has been made," but the court simply followed, as it usually does, what seems to have been the construction placed upon a State constitution by the courts of that State. Indeed, it does not appear from anything that is said in the case of *Harter* v. *Kernochan* what was the nature or purpose of township corporations in the State of Illinois, and hence the case furnishes no data upon which the question whether a subscription to a railroad was "a corporate purpose," could be determined or even discussed.

Our case of *The State ex rel. Brown* v. *C. & L. Railroad Company* (13 S. C., 290), has also been cited by appellant, but that case simply decides, what is conceded *under the authorities,* that a *county* may be invested with power to subscribe to a railroad, and it furnishes no authority whatever for the proposition that a *township* may be clothed with such a power. A county differs widely from a township, and therefore to apply the same

principles to one which have been applied to the other would necessarily lead to error and confusion. A county is a political division, expressly provided for by the constitution, endowed with specific powers, and provided with appropriate officers to manage its affairs, while a township has none of these features. It is a mere *territorial* division, which for convenience is used by officers and agencies of the government, but without any rights or powers—corporate or otherwise—until the legislature sees fit to erect it into a corporation for such purposes as may be specified in its charter. A township cannot with any propriety be considered as one of the political divisions of the State, for there is nothing in the constitution constituting or recognizing it as such, and there is no act of the legislature investing it with any such character, or with any of the attributes incident to such a condition. Hence the argument drawn from the amendment to article IX. of the Constitution (18 *Stat.*, 689), which declares that "Any bonded debt hereafter incurred by any county, municipal corporation, or *political division* of this State shall never exceed eight *per centum* of the assessed value of all the taxable property therein," loses all its force.

It is said, however, that this court has, in at least two cases, impliedly, though not expressly, recognized the power of the general assembly to invest townships with the taxing power— *Chamblee* v. *Tribble*, 23 S. C., 70, and *Railway Company* v. *Tribble*, 25 *Id.*, 260. It is not, and cannot be, pretended that the question now presented was either raised, considered, or decided in either of these cases, but the claim is that the power now brought in question was, by implication, recognized. This of itself would be quite sufficient to show that those cases present no obstacle whatever to the conclusion reached in this case. Courts of final resort do not usually volunteer to raise questions, especially such as impugn the constitutionality of an act of the legislature, but are content to confine themselves to the questions for review presented by the record. But when parties claim their constitutional rights, and demand a decision from the tribunal charged with that duty of a question involving such rights, the court has no other alternative but to consider and decide such

question according to its best judgment, even though the same question may have been passed by in previous cases.

But this is not all. In the case first cited it is quite certain that the question now presented could not authoritatively, and therefore could not properly, have been decided. For the question which lay at the foundation of that case was, whether the court had jurisdiction ; and after the court had reached the conclusion which it did, that the court had no jurisdiction, it would have been not only nugatory, but also improper, to consider or determine any other question which had been raised or might have been raised in the case, for the simple reason that the decision of a court in a case of which it has no jurisdiction, is without authority and binds no one.

In the other case the question as to the legality of the tax was not and could not have been raised, as it does not appear that the tax was paid under protest. On the contrary, so far as appeared in the case, the tax was paid voluntarily, and might be regarded as a voluntary contribution by the tax-payers residing in Williamston Township towards the construction of the railroad. The only question in the case was as to the disposition which should be made of a certain portion of the tax paid by a manufacturing company—whether it should be paid over to the railway company, or returned to the manufacturing company, under the provisions of the act of 1873, passed to promote the establishment of manufacturing enterprises. So that it would have been wholly out of place in that case to consider the question whether the tax was legally imposed, even if such question could have been raised. But inasmuch as it had been settled that the legality of the tax could not be tested by an application for an injunction or writ of prohibition restraining the collection of the tax, and inasmuch as the tax there in question did not appear to have been paid under protest, which would be necessary by the express terms of section 268 of the General Statutes to enable one to test the question, in the mode provided by that section, which is the only mode provided by law for that purpose, it is not easy to perceive how the question could have been raised. It seems, therefore, that the question now presented was not only not raised, but could not have been properly

raised in either of those cases, and hence they lend no strength whatever to the position contended for by the appellant.

I am also inclined to think that the act is also in violation of section 20, article II., of the Constitution. There is to my mind great force in the view presented by the Circuit Judge, that inasmuch as this act, which, by its title, purports to create *one* corporation—the railroad company—and in the body of the act undertakes to create other corporations—townships—of a wholly different character, relates to more than one subject, some of which are not expressed in the title. The title was an advertisement to the public that the purpose was to create a railroad corporation, and, as has been held, the means necessary and usual to accomplish that purpose might properly be provided for in the act. Hence to provide in such an act that a corporation already existing might subscribe for the stock of a railroad company, would be no violation of the constitutional provision. But when it is proposed to go further and *to create new corporations* by an act, the title of which gives no intimation whatever of such a purpose, the question assumes a very different aspect. But concurring, as I do, with the Chief Justice on the other point, it is unnecessary to discuss this question.

MR. JUSTICE McGOWAN, *dissenting*. I cannot concur in this judgment. Are the acts to charter the "Greenville and Port Royal Railway Company," and an act to amend the same, passed in 1885, so far as they purport to authorize townships to subscribe to the capital stock of said railway company, unconstitutional and void; and the tax illegal which was assessed and collected to pay the interest on the bonds issued in behalf of the Township of Ninety-Six?

This court has repeatedly held that "It is no small matter to declare an act of the legislature unconstitutional. The legislature is the law-making power of the State upon all subjects not prohibited by the constitution, every part of which should be so construed, if possible, as to allow full force to section 1, article II., which vest the full legislative power of the State in the general assembly." *Pelzer, Rodgers & Co.* v. *Campbell & Co.*, 15 S. C., 592. "The English parliament, in a political sense, is om-

nipotent, but with us it is the people; and the people speak and act through the legislature, except when restricted by the constitution of the United States or of the State. No statute can be disregarded unless a constitutional violation can be pointed out." *Cooley*, §§ 87–173. "The constitutionality of a law must be presumed until the violation of the constitution be proved beyond all reasonable doubt, and a reasonable doubt must be solved in favor of legislative action and the act be sustained." *Same.* "It is an axiom in American jurisprudence that a statute is not to be presumed void on this ground, unless the repugnancy to the constitution be clear, and the conclusion that it exists inevitable. Every doubt is to be resolved in support of the enactment. The particular clause of the constitution must be specified, and the act admit of no reasonable construction in harmony with its meaning. The judicial function involving such result is one of delicacy and to be exercised always with caution." *Township* v. *Talcott,* 19 Wall., 673.

This wise and conservative principle, thus reiterated in every possible form by elementary writers and judges of the highest character, is certainly not weakened in this case by its great importance, and the fact, stated at the bar, that very large sums of money have been invested in these bonds, relying with implicit faith and confidence upon an act placed upon the statute book by the legislature—the only law-making body of the State. The question, then, is, whether the act of the legislature in contention is so clearly and beyond doubt unconstitutional as to require the court, at this late day, and after so much has been done and investments made under it, to declare it unconstitutional and void.

1st. As to the title of the act. Section 20, article II., of the Constitution declares that "every act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title." Upon this subject I concur with the Chief Justice, and think it is unnecessary to attempt to add anything to what he has said. It seems to me that the case of *Connor* v. *Railroad Company* (23 S. C., 428), is precisely in point, in which Mr. Justice McIver well said: "As we held in *Charleston* v. *Oliver* (16 S. C., 56), upon the authority of Mr. Justice Cooley, there has been, and ought to be, a general disposition

to give a liberal construction to constitutional provisions like this now under consideration, rather than to embarrass legislation by an unnecessary strictness of construction. Hence, when a question under this clause of the constitution is presented for adjudication, we are bound to take a liberal and enlarged view, and, if practicable, bring the legislation which is assailed as unconstitutional within the limits prescribed by the supreme law of the land. Now, looking at the act in question in this spirit, we do not see how it conflicts with the provision of the constitution which has been quoted. The subject to which the act relates is the Green Pond, &c., Railway Company, and that subject is undoubtedly expressed in the title. Nor do we find that the act relates to any other subject. * * * No new subject is introduced into the act, but the subject which all the while engages the attention of the legislature is the railway, which necessarily includes any appropriate means for its construction. *San Antonio* v. *Mahaffy*, 96 U. S., 315."

2nd. But I cannot concur that the act assailed, giving the power to Ninety-Six Township to vote a subscription to the railroad company, was unconstitutional, for the reason that it was not within section 8 of article IX., of the State Constitution, which declares "that the corporate authorities of counties, townships, school districts, cities, towns, and villages may be vested with power to assess and collect taxes for corporate purposes." It will be observed that the constitution places counties and townships, in regard to taxation, on the same footing, and manifestly contemplates both as incorporated with certain local interests of their own; one smaller than the other, but both being territorial divisions with inhabitants, and both alike capable of internal improvement beneficial to the inhabitants. What Judge Willard (in *Brown* v. *Railway Company*, 13 S. C., 316) said as to counties is quite as applicable to townships. Section 8, article IX., of the Constitution, speaks of the "corporate purposes" of counties as objects for raising and expending county taxes, thus strengthening the view already presented: that these communities are capable of acquiring interests distinct and apart from such as concern the State at large. The limit is put by the constitution to the extent or character of such corporate purposes.

That the community may have local interests calling for the expenditure of money is clearly recognized and provided for, and that implies the power of incurring obligations, &c., &c. The question is not as to the power of the legislature, but whether the law-makers exercised their conceded right, so as to effectuate their manifest intention to make Ninety-Six Township a body corporate, with the power to subscribe by vote to the capital stock of the railroad company. Upon this subject all the presumptions are in favor of the act, and those who assail it must fail unless they show its unconstitutionality clearly and beyond doubt.

(1.) The Circuit Judge held that Ninety-Six was not a township within the meaning of the constitution. With all due respect, I think that was error. It was certainly a corporation from the adoption of the constitution (1868) until 1870, when its corporate powers were withdrawn by the legislature, leaving the territorial division, with its lines, boundaries, and name already fixed, like a lifeless body; ready, however, to have the new life of a corporation breathed into it. No other power but the legislature could give it that new life; and in 1885 it passed the act chartering the aforesaid railroad, in which, among other things, the legislature declared, "that for the purposes of this act all the counties, and townships in said counties, along the line of said railroad, or which are interested in the construction as herein provided for, shall be, and they are hereby, declared to be bodies politic and corporate, and vested with the necessary powers to carry out the provisions of this act; and shall have all the rights and be subject to all the liabilities in respect to any rights or causes of action growing out of the provisions of this act," &c., &c. The railroad runs through the old township of "Ninety-Six," and can there be any doubt that this act made it a corporate body? The act itself expressly so declares. It may be thought by some that it was rather a meagre corporation—scant in powers, authorities, and officials as such. But it must not be overlooked that the legislature, which created it, had the undoubted right to give it such shape and form as it thought proper—with a single power or a dozen. The only authority in the State which can make or unmake corporations, has expressly

declared that it is a corporation; and it seems to me that the court cannot assume legislative functions, and undertake to supervise and correct an act of the legislature as to the manner of creating a corporation, and the number or character of the powers which should be conferred. It was a clear case of "clay in the potter's hands."

(2.) As well as I can comprehend, it is further urged against the act that in fact it gave no corporate power, but only the right to subscribe by a vote of the inhabitants to the capital stock of the railroad company, which was no corporate power at all, but merely the exercise of a power presupposed to be already in existence—to have been previously granted. There is nothing whatever in this, for the right expressly given to exercise the power, involved and necessarily implied the grant of the power itself. This is clearly shown to be the settled law in the very latest work on the subject of the "Interpretation of Statutes" (1888). Mr. Endlich says: "An act which simply creates a corporation impliedly gives it the legal attributes of one, among which is a general power to make contracts. Even where a corporation is created with certain specifically enumerated powers, it possesses, in addition, by implication, all such as are either necessarily incident to those specified or essential to the expressed purposes and objects of the corporate existence. In this country all corporations, whether public or private, derive their powers from legislative grant, and can do no act for which authority is not expressly given or may not be reasonably inferred. But if we were to say that they can do nothing for which a warrant could not be found in the language of their charters, we should deny them, in some cases, the power of self-preservation, as well as many of the means necessary to effect the essential objects of their incorporation," &c., &c. See *Endlich Interpretation Statutes*, section 418, and *Dillon Corporations*, section 23.

(3.) It is, however, further urged that the act is unconstitutional and must be declared void, for the reason that the power it purports to give the townships (to aid in the construction of a railway) is not a corporate purpose within the meaning of the constitution. Mr. Dillon, recalling some views previously expressed, says: "The Supreme Court of the United States, follow-

ing repeated intimations of its judges in previous cases, have directly sustained the validity of legislative acts authorizing municipal aid to railroads. In view of the prior adjudications of that tribunal, in the municipal bond cases, * * * and of the almost uniform holding of the State courts, no other result could have been anticipated. This ends judicial discussion, if it does not terminate doubts." *Dillon on Corporations*, section 158 and notes (3d edition). It is now, then, conceded on all hands that the power to aid in the building of a railroad given to a county or a city already incorporated with defined powers is a "corporate purpose." See *Brown* v. *Railroad Company*, 13 S. C., 290; *Johnson* v. *County of Stark*, 24 Ill., 75; *Davidson* v. *Ramsey County*, 18 Minn., 482; *Nichol* v. *Nashville*, 9 Humph., 262; *Copes* v. *Charleston*, 10 Rich., 491.

But that such power to aid in building a railroad is a corporate purpose when given to a township corporation is denied, on grounds which to my mind are far from clear; but, on the contrary, are at least very doubtful. In the first place, it is said that "the corporate purpose must exist before a power can be granted to carry it out." I am not sure that I understand the precise point of this objection, unless it be that the power can only be called "corporate" when given to a body which had been previously made a corporation, with powers defined and indicating its character. If this be the meaning, then, according to this view suggested, the charter of a corporation could never be amended so as to enlarge its powers. The words of the constitution are: "May be invested with power," &c. Nothing is said of the time when, or the manner how—only on condition that it must be for a corporate purpose. The purpose can only appear from the powers given. I can see that a power cannot be exercised before it comes into existence; but I am unable to perceive why the grant of a power and the right to exercise it in the future may not be given simultaneously in the same act, *uno flatu.*

What is a corporate purpose? It is very obvious that it might be regarded as an improvement benefiting all the inhabitants of a township to have a railroad built through it, and, therefore, to secure that object might, in one sense, be regarded as a "corporate purpose"—that is to say, a purpose benefiting the corpora-

tion.   But we suppose that the expression in the constitution,
"corporate purpose," embraces more than that, and means some-
thing not only appertaining to the corporation, but within the
scope of its powers as a corporation.   For instance, we can well
understand that a "public school" corporation, laid out by the
United States for school purposes and without any State town-
ship organization, could not levy a tax to build a railroad; for
the very good reason that it was not a corporate purpose *quoad*
that particular corporation.   *Weightman* v. *Clark*, 13 Otto, 256.
As Chief Justice Waite well expressed it: "Taxation by munici-
pal or public corporations must be for a corporate purpose.   It
is not always easy to decide whether a certain kind of tax is
within or without this limitation, but we think it may safely be
said, as a general rule, a corporate purpose must be some purpose
which is germane to the general scope of the object for which the
corporation was created."   This is the principle clearly stated.
Now, tested by it, can it be said that the power to aid in the
building of a railroad was not a corporate purpose as to Ninety-
Six corporation ?   Was that not "a purpose germane to the gen-
eral scope of the object for which the corporation was created" ?
It was not created for "school purposes," but for the very pur-
pose of allowing the inhabitants, if they saw fit, to aid in building
the road.   So far as concerned the corporation of Ninety-Six, it
was not only a corporate purpose, but *the* corporate purpose for
which the corporation was created.   The act which created it
expressly declared that it "was for the purposes of this act," viz.,
the building of the railroad.

   That this was the view of the Supreme Court clearly appears
from another case, decided soon after that of Weightman, as to
the "school district."   The case of *Harter Township* v. *Kerno-
chan*, 13 Otto. 562 (also from the State of Illinois), arose in
reference to the liability of the township on certain bonds voted
by the inhabitants to assist in building "The Illinois Southeastern
Railway."   The court held the township liable, and in delivering
the opinion, Judge Harlan said: "But neither that nor any other
decision by the State court distinctly meets the precise point now
before us, or would justify us in holding (as we ought not to do,
except in a clear case) that the general assembly of the State had

transcended its constitutional powers. The act did not assume to impose a debt upon the township without the consent of the electors. It expressly required an election to be held, at which the legal voters could determine the question of donation (subscription, as we call it) for themselves. The election was held, and a donation voted to aid in the construction of a railroad. That, it must be conceded, was a corporate purpose within the meaning of the constitution [the same as ours precisely], as interpreted by the State court, &c." See, also, *St. Joseph Township* v. *Rogers*, 16 Wall., 662.

But without encumbering this opinion with reference to other cases, it surely cannot be necessary to do more than refer to the latest case that has been brought to our attention (1888), which, it seems to me, is absolutely conclusive of this upon every point made. The case is *Brown* v. *County of Hertford*, 100 N. C., 92, also reported in 5 S. E. Rep., 178. In an act of the general assembly of the State, chartering the "Murfreesboro Railroad Company," the 14th section provided as follows : "That Murfreesboro Township, in Hertford County, and the town of Murfreesboro in said county, may subscribe to the capital stock of the Murfreesboro Railroad Company, or make donations to said company, to be secured by the bonds of said township or town, as the case may be, bearing interest, &c., subject to the approval of the qualified voters of said township or town," &c. As stated in the opinion of the court, the main question in the case was whether the general assembly had the constitutional power to authorize a township to vote its bonds to aid in building a railroad running partly through the township. The court held that the general assembly had such power, and in delivering the opinion of the Supreme Court, Judge Merriman said : "Townships, therefore, are within the power and control of the general assembly, just as are counties, cities, towns, and other municipal corporations. It may confer on them, or any one of them, corporate powers, with the view to accomplish any lawful purpose to promote the prosperity, safety, convenience, health, and common good of the people residing within them and resorting thither from time to time. And we can see no good reason why it may not confer such power for a single purpose as well as many. There may be enterprises

important to the people of localities, such as townships, school districts, and the like, that may be promoted by the exercise of corporate powers to a limited extent by such communities.   *  * We are unable to see any just reason why the people of a township through which a railroad is located shall not, if they see fit, aid in the construction by taxing themselves and creating a debt for the purpose, when the legislature provides that it may, just as the people of a county, city, or town may do, and for the like considerations. It may be unwise or inexpedient as a measure of economy, but the taxpayers—electors—must judge as to that. In many important respects, the citizens of a township are an organized community, separate from their neighbors, and they may derive great and special advantages from a railroad to be located and constructed in their midst," &c., &c.

As it seems to me, this is conclusive of every point made in the case. It is said, however, that the constitution of North Carolina has in it no such provision as that in ours, which, by implication, limits the power of the legislature to allow corporate assessments only for "corporate purposes." Assuming this to be so, I do not see how it can affect the case, in the view expressed by Judge Merriman, that the building of a railroad is as much a corporate purpose for a township as "of a county, city, or town." It is true that, as the judgment of a sister State, the case of *Brown* v. *County of Hertford*, *supra*, is not absolutely binding as authority upon us; but it is certainly valuable in the consideration of a similar question, on account of the high source from which it comes, and the soundness of its reasoning. It is also true that the precise point now made has never been formally decided in this State; but the Supreme Court, in at least two cases, has enforced as legal assessments levied by township authority under acts of the legislature similar to the one under consideration. This, at least, furnished some ground for the belief of the country that such assessments were not illegal and void. See *Chamblee* v. *Tribble*, 23 S. C., 70, and *Railway Company* v. *Tribble*, 25 *Id.*, 264. I do not think it has been clearly shown that the act of the legislature in question is unconstitutional, and therefore the judgment below should be reversed.

                    Judgment affirmed.

The defendant filed a petition for rehearing, alleging that while the Circuit Judge had ruled that a township subscription to a railroad company was not a corporate purpose, this court does not so hold; and moreover, that the absence of any corporate purpose, as to which this court does decide, was not raised or decided on Circuit, and not argued in this court by counsel on either side.

Upon this petition the following order was endorsed December 14, 1888,

PER CURIAM.    The petition herein is based upon the statement that this court failed to consider and adjudicate the question, whether the power to subscribe to the railroad in question and to tax for the payment of such subscription attempted to be conferred upon Ninety-Six township was a corporate purpose in such township, which was one of the questions passed upon by the Circuit Judge, and a ground of appeal to this court.    Now, in face of the fact that this court distinctly held that no corporate purpose whatever had been conferred upon Ninety-Six township by the act in question, notwithstanding the power to subscribe and tax attempted to be given therein, and the further fact that the judgment of the Circuit Court holding that said power was not in itself a corporate purpose was distinctly affirmed by this court, we are at a loss to understand the ground urged for a rehearing.    This court not having overlooked any question of law or fact involved in the appeal, this motion is dismissed.