STATE *EX RELATIONE* DICKINSON v. NEELY.

1.   All the townships in the State having received repeated legislative recognition as such, and this township in particular, it is too late now to question whether this township was territorially designated with the formalities required in the act of 1868, originally creating townships.

2.   The act of 1888 (20 *Stat.,* 12) was not intended to validate a previous statute which this court had pronounced unconstitutional, nor to legalize acts done thereunder, but to impose upon consenting townships a debt which they had vainly attempted to impose upon themselves under such unconstitutional statute.

3.   The legislature cannot delegate to a township the power to tax for a public purpose within its limits, unless the tax be also for a corporate purpose; but the legislature, by the exercise of its own power, may impose a tax for a public purpose affecting a township, although such purpose is not corporate.   And a railroad is so far a public purpose as to a township through which it passes, that the legislature may impose a tax upon the property of the township, provided the legislature is

satisfied that the inhabitants have consented to be taxed for such purpose.

4. Mandamus will not lie to compel a county treasurer to pay out money on a coupon of a railroad aid bond, when the only constitutional law that recognizes such bond and its coupons as a debt declares that no tax shall be levied to pay interest on such debt until the railroad has been completed, and that all taxes heretofore collected for such purpose shall be refunded to the taxpayers; and where no tax has been, or could have been, collected since the railroad was completed.

This was a petition, presented to this court in its original jurisdiction for a writ of mandamus. The petition was as follows:

The petition of P. P. Dickinson, above named, respectfully shows to the court:

1. That by act of the general assembly of this State, entitled "An act to incorporate the Georgetown and North Carolina Narrow Gauge Railroad Company," approved March 4, 1878.(16 Stat., 427), a charter of incorporation was granted to the "Georgetown and North Carolina Narrow Gauge Railroad Company," with authority to construct and operate a narrow gauge railroad line from the town of Georgetown, in this State, through the Counties of Georgetown, Williamsburg, Clarendon, Sumter, and Kershaw, to such point in the direction of, or on the southern boundary line of, the State of North Carolina as may be determined upon; and, by an amendatory act of February 9, 1882 (17 Stat., 961), the said railroad company was authorized and empowered to make their road either narrow gauge or broad gauge as might be deemed best.

2. That by an act of the general assembly of said State, entitled "An act to amend an act entitled 'An act to incorporate the Georgetown and North Carolina Narrow Gauge Railroad Company,' and the act amending the same, and to provide for subscriptions thereto," approved December 21, 1883 (18 Stat., 365), it was provided (in section 15) "that said railroad company is hereby authorized to construct such portion of its road as it shall be able without being obliged to construct the whole road contemplated under the original charter; and also to deflect said road at such point as it shall be deemed best to some point in the harbor of Charleston as it shall deem most advisable."

3. That the said last mentioned act authorized counties and

townships interested in the construction of said railroad to subscribe thereto such sum as might be determined upon at an election to be called and held in such counties and townships, under the direction and supervision of the county commissioners of the county so subscribing, or of the county in which is situated the township so subscribing. And upon such election being favorable to such subscription, the county commissioners of the county so subscribing, or in which is situated the township so subscribing, as the corporate agents thereof respectively, were directed to issue *seven per cent.* coupon bonds, payable twenty-five years after the date thereof, of the denomination of one hundred dollars, five hundred dollars, and one thousand dollars. And for the payment of the interest on such bonds as might be issued by counties or townships under this act, the county auditor was required to assess annually upon the property of the county or township so subscribing such a per centum or tax as would be sufficient to pay the interest on such bonds, to be known and styled in the tax books as said railroad tax; and the county treasurer was directed to collect such tax and pay the same to the holders of such coupons. And for the purposes of and to carry out the provisions of this act, the counties and townships so subscribing were declared to be bodies politic and corporate, and were vested with powers necessary to this end.

4. That said last mentioned act also contained the following, to wit: "That all taxes received from the said railroad upon the levy for county purposes, instead of going into the county treasury, shall be applied by the county treasurer and county commissioners to the payment of the interest on the bonds subscribed by counties and townships, respectively, under this and preceding sections of this act."

5. That by an act of the general assembly of this State, entitled "An act to amend an act entitled 'An act to incorporate the Georgetown and North Carolina Narrow Gauge Railroad Company,' and the acts amendatory thereof," approved December 22, 1885 (19 Stat., 38), the name of the said railroad company was changed to that of "The Charleston, Cincinnati and Chicago Railroad Company," and all the rights, powers, privileges, franchises, and immunities conferred upon and enjoyed by said com-

pany under its original name were continued to, and conferred upon, said railroad company under its new corporate name, and all obligations and contracts, subscriptions, petitions for elections, and acts entered into, made, and done by said company under its original corporate name, or by individuals, corporations, or board of county commissioners, under and by virtue of the act of incorporation, and acts amendatory thereof, were made as binding and effectual as fully as if made, entered into, and done with said railroad company under its new name, "The Charleston, Cincinnati and Chicago Railroad Company."

6. That under the provisions of the said act of assembly of December 21, 1883, the inhabitants of said township having voted in aid of said railroad, and the county commissioners of York County having determined that the provisions of said act, so far as the same related to the question of subscription by Cherokee township, in York County, had been complied with, and that a majority of the voters of said township had voted in favor of subscription by said township to the said "The Charleston, Cincinnati and Chicago Railroad Company" to the amount of twenty-five thousand dollars, the said county commissioners did, on the first day of May, A. D. 1886, execute, deliver, and issue coupon bonds, according to the requirements of said act, to the amount of sixteen thousand six hundred dollars, in the name of said Cherokee township, in payment exclusively for money expended and work done in the construction and completion of said railroad within the limits of said township, which is between the County of Kershaw and a point on the southern boundary of the State of North Carolina. The bonds so issued, with their attached coupons, were in form following:

"No. 16. $1,000. United States of America, Cherokee Township, County of York, South Carolina.

"The Township of Cherokee, in the County of York, in the State of South Carolina, is justly indebted to ———— ———— ———— ————, or bearer, in the sum of one thousand dollars, and will pay the same to the holder thereof on the first day of May, in the year of our Lord one thousand nine hundred and eleven, at Yorkville, South Carolina, upon the surrender of this bond. The interest, at the rate of seven per centum per annum,

to be paid annually on the first day of January in each and every year ensuing the date hereof, at Yorkville, South Carolina, upon the delivery of the several coupons hereto annexed, as they shall respectively become due.

"This bond is issued in pursuance of the authority granted by sections 11, 12, 13, and 14 of an act of the general assembly of the State of South Carolina, approved on the twenty-first day of December, A. D. 1883, entitled 'An act to incorporate the Georgetown and North Carolina Narrow Gauge Railroad Company, and the acts amending the same, and to provide for subscriptions thereto.'

"The commissioners of the county representing the Township of Cherokee, as its corporate agents, having first ascertained the sense of the qualified voters to favor a corporate subscription by said township to the capital stock of said railroad company, now known by an amended act ratified December 22, A. D. 1885, as 'The Charleston, Cincinnati and Chicago Railroad Company,' pursuant to an election duly held for that purpose, and which subscription is recorded upon the county records of York County, have caused this bond to be issued to pay the subscription of said township to said railroad company, and the whole to be done under the authority conferred by and in conformity with the provisions of said sections of the acts aforesaid.

"This bond is deposited in trust with the Boston Safe Deposit and Trust Company of Boston, Massachusetts, and is not valid unless the certificate endorsed thereon is signed by said trustee.

"In testimony whereof the said county commissioners have caused this bond to be signed and countersigned by the clerk of the board. and attested with the seal of said County of Yorkville, on the first day of May, in the year of our Lord one thousand eight hundred and eighty-six.

"(Signed)      JAMES B. ALLISON,
  "Clerk of the Board of County Commissioners.
"(Signed)      J. A. STEELE,
        JAMES B. ALLISON,
        R. W. WHITESIDES,
  "County Commissioners of York County."

To said bond are attached coupons maturing on January 1 of every year until the maturity of the bond, all of like form, that maturing January 1, 1889, being in words and figures :

"$70.00.    Cherokee Township, County of York, South Carolina, will pay January 1, 1889, the bearer seventy dollars interest on its bond, No. 16, for $1,000, issued to the Charleston, Cincinnati and Chicago R. R. Co., at county treasurer's office, Yorkville, South Carolina.

"(Signed)                    JAMES B. ALLISON,
        "Clerk of Board of County Commissioners."

Upon said bond appears the following endorsement :

"Trustee's Certificate.    I hereby certify that the within bond is one of a series of bonds delivered to me as trustee, amounting in the aggregate to twenty-five thousand dollars.

"Boston Safe Deposit and Trust Co., trustee.
                            "E. MILES, Treasurer."

7.  That after the issue of said bonds, to wit, on the 24th day of December, 1886, the legislature of South Carolina, by its supply or tax act of that date (19 Stat., 646), levied a tax of two and one-fourth mills upon all the taxable property in said Cherokee township of York County for interest on railroad bonds issued by said Cherokee township ; and a like tax levy for the same purpose was made by the said legislature on December 24, 1887, in its supply or tax act of that date.   (19 Stat., 870, 876.) Both of said acts were duly approved, and the only railroad bonds ever issued by, or in the name of, said Cherokee township are the bonds described in the next preceding section of this petition.

8.  That in December, 1888, the legislature of South Carolina passed an act, which was approved by the governor on December 22, 1888, and which reads as follows:

[Here the "act to provide for the payment of township bonds issued in aid of railroads in this State" (20 Stat., 12) is inserted in full.]

9.  The said "The Charleston, Cincinnati and Chicago Railroad Company" has fully completed the construction of its rail-

road through said Cherokee township, and the said railroad has been received and accepted by the railroad commissioners of this State, and trains are now running regularly thereon.

10. That by an act of the legislature of this State, approved December 24, 1888, entitled "An act to raise supplies and make appropriations for the fiscal year commencing November 1, 1888," it was provided in the fifth section as follows : "That the county auditors and county treasurers of this State are hereby required, under the direction and supervision of the comptroller general, to make collection of the taxes levied under and pursuant to the provisions of this act, in the manner and at the time and under the conditions hereinafter provided, and they are hereby forbidden to collect any other tax whatsoever levied for the fiscal year, unless herein expressly authorized so to do, except the tax authorized by law to meet the interest and retire the bonds issued by counties and townships in aid of railroads, or taxes voted by towns or counties, or assessed upon townships as subscriptions to railroads, and taxes to build fences under statutes authorizing and directing the same, and except, also, the special school tax authorized to be levied in any school district of this State, and except such special tax or collection as is authorized by any act or joint resolution of the general assembly," &c.

11. Your petitioner is the *bona fide* holder for value before due of one of said bonds, to wit, bond No. 16, for $1,000, so issued, as aforesaid, by Cherokee township, upon which the coupon, maturing January 1, 1889, for $70.00, is past due and unpaid.

12. That H. A. D. Neely is now the county treasurer of York County, and as such now has in hand about eighty-three dollars, the proceeds of the tax levy for the fiscal year commencing November 1, 1886, for ordinary county purposes, upon the property of the said "The Charleston, Cincinnati and Chicago Railroad Company," lying within the territorial limits of said Cherokee township, collected under the said tax act of December, 1886; and the further sum of fifty-five 83-100 dollars, the proceeds of the tax levy for the fiscal year commencing November 1, 1887, for ordinary county purposes, upon the property of said railroad company within said township collected under the said tax act of December, 1887 ; and the further sum of five hundred and nine 31-100

38—30

dollars, the proceeds of the special tax levied under the said tax act of December, 1887, upon the taxable property of said township for the fiscal year commencing November 1, 1887, to pay interest on said bonds. And the amount of money so in the hands of said county treasurer is sufficient to pay the matured coupon on bond No. 16 so issued by or in the name of said Cherokee township, or the matured interest on the debt so held by petitioner and imposed upon the inhabitants and taxable property of said township by the said act of December, 1888.

13. That Robert W. Whitesides, James B. Allison, and E. R. Mills are now the county commissioners for York County; and since the maturity of the coupons or interest so due to your petitioner, your petitioner, by his attorney, has demanded of said county commissioners (said E. R. Mills not being present at the board), and of said H. A. D. Neely, county treasurer, as aforesaid, at their office in Yorkville, that they apply so much of the said fund so in the hands of said county treasurer as may be necessary to the payment of your petitioner's said coupon or interest; but the said county commissioners, and the said H. A. D. Neely, county treasurer, as aforesaid, refuse to direct payment of said coupon or interest, or to pay the same, or any part thereof.

14. Your petitioner has no adequate and sufficient remedy other than the writ of *mandamus* to compel the said county commissioners and H. A. D. Neely, county treasurer, to pay to your petitioner his said coupon or debt.

Wherefore your petitioner prays that a rule may be issued requiring the said county commissioners and the said H. A. D. Neely, county treasurer of York County, to show cause before this honorable court why a writ of *mandamus* should not issue requiring them to pay the matured coupon aforesaid or interest on said bond, No. 16, or debt of said Cherokee township, and now held by your petitioner; and that if no sufficient cause be shown, that your peremptory writ of *mandamus* do issue commanding the said county commissioners and the said H. A. D. Neely, county treasurer as aforesaid, to pay the said matured coupon or interest last aforesaid. And your petitioner will ever pray, and so forth.

After the service of the rule to show cause, a new board of county commissioners came into office, who submitted themselves to the jurisdiction of the court, by joining with the county treasurer in filing the following return :

The respondents, H. A. D. Neely, county treasurer of York County, and T. G. Culp, Robert W. Whitesides, and William Ross, county commissioners of York County, answering the petition of the relator herein, for cause why the writ of mandamus should not issue to compel the performance by them respectively of certain acts, the non-performance of which the relator complains to this honorable court, make this return :

I. That Cherokee township is not a township within the spirit and meaning of section 8, article IX., of the Constitution of South Carolina, for the reason that the requirements of sections 11, 12, and 13 of the act entitled "An act to define the jurisdiction and duties of county commissioners," approved September 26, 1868, were never complied with, as respondents are informed and believe—*first*, in this, that the lines and boundaries of none of the townships in York County have been established by the erection of permanent monuments of stone, brick, or iron, to designate the respective boundary lines of said townships "at every angle thereof" ; nor have the county commissioners of York County in any other way definitely established the territory and boundary lines of any of the townships in said county; nor did the Circuit Court for York County ever, under section 6 of the act entitled "An act to amend an act to define the jurisdiction and duties of county commissioners," approved March 27, 1869, make any order, or direct any measure, looking to the division of said county into townships, as provided for in said original act; and, *secondly*, in this, that the said commissioners never reported their acts and doings, under section 2 of said original act, to the general assembly for confirmation. And respondents further say, that Cherokee township is not a political division of the State of South Carolina, within the spirit and meaning of section 17, article IX., of the Constitution of said State.

II. That a number of freeholders of Cherokee township did not sign the petition under which the election was held, under which said election said bonds were issued; and that at said elec-

tion a number of votes were cast against the subscription of said bonds; that this honorable court has already solemnly adjudged that the townships in this State, along the line of the Charleston, Cincinnati and Chicago Railroad, were without any legal authority to vote a subscription to said railroad; and in view of this adjudication, and of the peculiar rights of the minority of the freeholders and voters of said township, who were opposed to said subscription; and of the fact, that the stock in said Charleston, Cincinnati and Chicago Railroad has, as respondents are informed and believe, been rendered worthless by the mortgage of its road-bed by said railroad company to the Boston Safe Deposit and Trust Company, for the benefit of the Massachusetts and Southern Construction Company, to the amount of twenty-five thousand dollars per mile, after said election, but before the completion of said railroad through said township; and of the further fact that they have been advised that the attempt of the legislature of South Carolina, by its recent township bond act, entitled "An act to provide for the payment of township bonds issued in aid of railroads in this State," approved December 22, 1888, to validate all such bonds, and to direct the levy and collection of a special township tax to meet the interest upon said township bonds, or to give any corporate purpose to townships in or concerning "highways," and so forth—a matter which falls exclusively within the constitutional jurisdiction of the county commissioners of the respective counties of this State—is inoperative and void; they have deemed it right and proper, and in the strict line of their duty, respectively, to refuse to perform the acts which relator now seeks, by a writ of mandamus, to have them perform. And respondents say that relator ought not to have the extraordinary remedy invoked by him so long as his rights under said act remain doubtful, and that said rights ought first to be declared upon, in, and through an ordinary action at law upon the coupon sought to be collected by this proceeding.

III. That the said Charleston, Cincinnati and Chicago Railroad was not completed through the said township of Cherokee and accepted by the railroad commissioners until the 21st day of December, 1888, up to which date no accrued interest upon the bonds of said township, and no provision for the collection there-

of, is recognized even by the aforesaid township validating act, and, therefore, the coupon, the subject of this proceeding, if valid at all, which respondents deny, is only good for the sum of one 95–100 dollars.

IV. That under the tax act of December, 1886, it is admitted that the respondent, the county treasurer of York County, collected the sum of ninety-three 2–100 dollars, levied upon the property of the Charleston, Cincinnati and Chicago Railroad lying within the limits of Cherokee township, for ordinary county purposes; but respondents say, that on the 20th day of December, 1887, before the bonds of said township were adjudged to be invalid, the said sum was, by a resolution of said board of county commissioners, and in accordance with the provisions of the act set forth in paragraph IV. of the petition herein, transferred to the "railroad tax" fund, to pay interest on the bonds of said township to accrue January 1, 1888; that afterwards, on or about January 1, 1888, the sum of eleven hundred and sixty-two dollars was applied to the payment of the said interest, leaving a balance of three hundred and eighty-five 84–100 dollars of said "railroad tax" fund on hand; that, consequently, there is now in the hands of the treasurer aforesaid only such a proportionate part of said sum of ninety-three 2–100 dollars, as the balance of said "railroad tax" fund remaining bears to the whole amount collected, to wit, the sum of twenty-two 89–100 dollars. But respondents say that this honorable court, in the case of T. B. Whitesides *v.* H. A. D. Neely, county treasurer, perpetually enjoined the said county treasurer from paying out any part of said balance of three hundred and eighty-five 84–100 dollars upon the bonds or coupons of Cherokee township.[1]

V. Respondents further show, that both under the provisions of the aforesaid township bond validating act and the act entitled "An act for the relief of taxpayers from payment of taxes levied to pay interest on township bonds, issued in aid of the Charleston, Cincinnati and Chicago Railroad, by the townships of Catawba, York, Ebenezer, Cherokee, and Broad River," &c., approved December 24, 1888, the said county treasurer is authorized and required to refund to the taxpayers the amount of money on hand

[1] See *ante*, page 31.

raised under the tax levy for the fiscal year commencing November 1, 1887, to pay interest on township bonds issued in aid of the Charleston, Cincinnati and Chicago Railroad, including, of course, the bonds of Cherokee township; and respondents say they ought not to be compelled to go contrary to said provisions, as the relator seeks, by the writ of mandamus prayed for herein, to have them do.

VI. That the bonds of the said township of Cherokee being invalid as aforesaid, and the legislature being powerless to levy a tax for the payment of the interest thereon as aforesaid, or to create a corporate purpose in a township in conflict with section 19, article IV., of the Constitution, as aforesaid, as respondents are advised, the amount now in the treasurer's hands, raised from the Charleston, Cincinnati and Chicago Railroad, upon its property in said township, for ordinary county purposes for the fiscal year commencing November 1, 1887, belongs of right to the County of York, and respondents ought not to be required to apply it to relator's coupon, set forth in the petition herein, as prayed for by him; and further, respondents say that they ought not to be so required, in any event, for the further reason, that the provisions of section 13 of the act entitled "An act to amend an act entitled 'An act to incorporate the Georgetown and North Carolina Narrow Gauge Railroad Company,'" &c., approved December 21, 1883, are unconstitutional and void, as respondents are advised, so far as said section attempts to divert the funds of the county proper from their original and legitimate corporate purpose.

Wherefore respondents pray judgment, that the rule herein be discharged with costs.

*Messrs. Sheppard Bros.*, for relator.

A legislature may confer upon municipal corporations the power to subscribe to railroads and impose a tax for the payment of such subscription. *Dill. Mun. Corp.* (3rd edit.), § 153. From 1882 to 1887, the legislature of South Carolina passed thirty-four such acts, authorizing township subscriptions. In *Floyd* v. *Perrin, ante,* 1, these acts were declared unconstitutional for want of a corporate purpose in these incorporated townships. Thereupon

the act of December 22, 1888 (20 *Stat.*, 12), was passed, to re-move the defect which rendered these statutes unconstitutional. The legislature can impose a debt upon a community, as in 7 *S. C.*, 375; 21 *Id.*, 414; 18 *Id.*, 597. See, too, 19 *Stat.*, 1075; 16 *Stat.*, 251. It is claimed that there is no difference between the act of 1888 (20 *Stat.*, 12) and the unconstitutional act of 1883 (18 *Stat.*, 365). But the difference is this: The legislature levies the tax under the act of 1888, while the corporate authori-ties of the townships levied the tax under the act of 1883. The townships can levy a tax only for a corporate purpose, but the sovereign legislature can levy a tax for any public purpose—and railroads are a public purpose. 7 *Wall.*, 623; 15 *Penn.*, 166; 10 *Rich.*, 501; *Pott. Dwar.*, 62, 64; 46 *N. Y.*, 405; 57 *Id.*, 191; 103 *U. S.*, 806–813; 19 *Wall.*, 674; 116 *U. S.*, 359, 363. This last case (*Anderson* v. *Santa Anna*) shows that the electors of a township are its corporate authorities; and that the election under the act of 1883 sufficiently expressed the consent of the inhabitants to the creation of this debt. See, too, 120 *U. S.*, 760.

Cherokee township has been repeatedly recognized by the legis-lature. 19 *Stat.*, 646, 876, 588; 20 *Stat.*, 203. The bond and coupon recognizes this township. *Endlich Interp. Stat.*, 513; 2 *Mor. Priv. Corp.*, 752; *Boone Corp.*, 259. The statute re-quiring taxes illegally collected to be refunded, does not affect this case, for we seek payment, under section 13 of the act of 1883, only from moneys *legally* collected for *county* purposes—and which are not to be repaid to the taxpayers.

*Messrs. James F. Hart* and *R. W. Shand*, same side.

*Mr. C. E. Spencer*, for respondents.

The act of 1888 does not pretend to cure the constitutional defect in the prior act. 30 *S. C.*, 1. The act of 1888 does not contain a feature found wanting in the act of 1883, unless it be the appropriation of possible dividends! The legislature could not make railroad construction a corporate purpose of townships. *Const.*, art. IV., § 19; 13 *S. C.*, 316; 30 *Id.*, 1; 24 *Id.*, 547; *Dudley*, 167; *Cool. Con. Lim.*, 138; *Dill. Mun. Corp.* (3rd

edit.), § 184 ; 2 *S. C.*, 1. The legislature could not ratify these bonds, doubly unconstitutional, especially after *Whitesides* v. *Neely*, 30 S. C., 31. The legislature was itself without power in this matter. The only possible mode of validation would have been a reënactment of the old statute with curative features added. The act of 1888 is void as an attempted reversal of a judgment of this court. 26 *Md.*, 194 ; *Dill. Mun. Corp.*, § 77. The legislature cannot impose the tax as laid, for it is precisely what the legislature did in the act of 1883, heretofore pronounced void. If not expressly decided in *Floyd* v. *Perrin*, it was certainly before the court, because it was raised in the pleadings. And such should be the decision here. *Cool. Tax.*, 678, 685 ; 25 *Wisc.*, 167 ; 51 *Barb.*, 316 ; 13 *Am. Rep.*, 480 ; *Cool. Con. Lim.*, 283, 616. The legislature has no compulsory power over local taxation unless there is a *State* necessity for it. In other cases, it can only authorize and permit action. In some States railroads have been held to be a corporate purpose, but not so in South Carolina. 13 *S. C.*, 316. Our constitution leaves such a question to the corporate authorities, to be exercised only for a corporate purpose. A township cannot be compelled by the legislature to subscribe to a railroad. *Cool. Tax.*, 699 ; 69 *Penn.*, 352.

Mandamus does not lie.

*Mr. N. W. Hardin*, same side.

April 15, 1889. The opinion of the court was delivered by

Mr. Justice McIver. This is an application addressed to this court in its original jurisdiction for a writ of *mandamus* to compel the respondents to apply funds alleged to be in the hands of the respondent, Neely, as county treasurer, to the payment of a coupon which matured on 1st of January, 1889, on a bond held by the relator, purporting to have been issued by the county commissioners of York County, as the corporate agents of Cherokee township, under the provisions of an act of the general assembly of this State, approved December 21, 1883, as well as under the provisions of an act approved December 22, 1888, entitled "An act to provide for the payment of township bonds issued in aid of railroads in this State." There are other appro-

priate allegations in the petition which it is not deemed necessary to repeat here, as we think it would be well for the reporter, in preparing the report in this case, to set out the petition as well as the return, of which we shall make only a brief statement.

The term of office of the persons named as county commissioners in the title of this case having expired, the return is made by their successors in office, to wit: T. G. Culp, Robert W. Whitesides, and Wm. Ross, together with the respondent, Neely. The return sets forth, among other things, as reasons for declining to comply with the demand of the relator, that Cherokee township has never been constituted a township in accordance with law, inasmuch as certain provisions of the act defining the powers and duties of county commissioners have never been complied with, to wit: that the lines and boundaries of the townships in York County have never been established "by the erection of permanent monuments of stone, brick, or iron to designate the respective boundary lines of said townships 'at every angle thereof;' nor have the county commissioners of York County in any other way definitely established the territory and boundary lines of any of the townships in said county;" that the Circuit Court never made "any order or direct any measure looking to the division of said county into townships" as provided by law; nor did the county commissioners ever report their acts and doings to the general assembly for confirmation.

It is also alleged that the act of 1883, above referred to, has been adjudged unconstitutional by this court, and respondents say that they have been advised that the attempt of the legislature, by the recent act of December 22, 1888, to validate the bonds issued under the act of 1883, and to provide for the levy of a tax to pay the same, is likewise unconstitutional and void. It is further alleged that the Charleston, Cincinnati and Chicago Railroad, in aid of which the bonds in question purport to have been issued, was not completed through Cherokee township and accepted by the railroad commissioners until December 21, 1888, and that even under the provisions of the act of December 22, 1888, no taxes in the hands of the respondent, Neely, as county treasurer, can be applied to the payment of the coupon held by the relator, though it is admitted that there are certain sums, the

amounts of which are stated in the return, in the hands of Neely, as county treasurer, arising from taxes levied and collected prior to the completion of the road through Cherokee township, which, for the reasons stated in the return, cannot be applied to the coupon held by the relator.

This brief and condensed statement of the allegations in the petition and return is deemed sufficient, under the view which we take of the case, to present the real questions involved, though there are several other matters mentioned which we do not think it material to notice, as we shall confine ourselves to what we regard the real questions in the case. The material questions raised by the pleadings in this case are : First, whether Cherokee township has ever been created a township according to law. Second, whether the act of December 22, 1888, entitled "An act to provide for the payment of township bonds issued in aid of railroads in this State," is constitutional. Third, if so, whether the respondent, Neely, has in his hands, as county treasurer of York County, any funds applicable to the payment of the coupon held by the relator.

As to the first question. In view of the repeated instances in which the legislature has recognized the division of counties into townships, and especially in view of the legislation in which the particular township of Cherokee has been recognized as such, it seems to us too late now to inquire whether the regulations in respect to the marking the corners of the townships, reporting to the court and to the legislature the action of the county commissioners, have all been complied with. Indeed, the counsel for the respondents have laid so little stress upon this point that we do not deem it necessary to consider it further.

The real question in the case is the second, as to the constitutionality of the act of 1888. This question having just been considered and determined in the recent case of *State* v. *Whitesides*, *ante* 579, we do not propose to go into any extended discussion of it. Indeed, but for the importance of the question and the large interests involved, we would not undertake to add anything to what is there so well said.

We do not regard the act in question, which for convenience will be designated as the act of 1888, as in any sense a validat-

ing act, and hence any discussion of it in that aspect would be out of place. It has none of the features of such an act. It does not purport to declare any previous legislation valid, which had been decided by the tribunal invested with jurisdiction for that purpose to be unconstitutional and void, nor does it purport to legalize any acts done under such unconstitutional legislation. On the contrary, it is an exercise of original legislative power, and the real question is, whether there is anything in the constitution of the State forbidding the exercise of such a power.

As we understand it, the legislature has been invested by the people with unlimited power of taxation, except as restrained by some constitutional provisions; and it has also been authorized by section 8, article IX., to delegate this high power of taxation to certain specified subordinate agencies, for certain specified purposes. It may, then, be said that, in respect to taxation, the legislature has been invested with two distinct classes of powers: one which it exercises at its own sovereign will; the other which it delegates to some subordinate agency, to be exercised by such agency at its will, within the prescribed limits. Now, while there are limitations to both of these classes of powers, the limitations are not the same. In the former the only limitation is some constitutional provision, while in the latter there may be, and usually are, additional limitations prescribed in the act delegating the power. But the more material distinction between these two classes of powers is (so far as concerns the present discussion) that in the former the only limitation imposed by the constitution, so far as the purpose for which the tax is imposed is concerned, is that it shall be a *public purpose*, while in the latter the limitation is that it shall also be for *a corporate purpose*.

Bearing these distinctions in mind, it must be obvious that when this court decided in *Floyd* v. *Perrin, ante* 1, that the act purporting to delegate power to a township to levy a tax for a purpose other than a corporate purpose was unconstitutional, it did not touch the question whether the legislature might not, by the exercise of *its own* power, impose a tax for the same purpose for which it had, without constitutional authority, attempted to delegate the power to certain townships. That decision rested on the ground that as the purpose for which the legislature at-

tempted to delegate to the townships the power of taxation was not a corporate purpose, the act purporting to delegate such power was without constitutional authority. No such question is presented or can arise in this case. The only question here is, whether the legislature can, by the original exercise of its own power of taxation, impose a tax on the property within the boundaries of Cherokee township for the purpose of contributing to the construction of a railroad which passes through said township.

The proposition that the construction of a railroad is such a public purpose as to warrant the levy of taxes to aid in building it is too well settled by the very decided weight of authority to admit of further discussion, although if the question were an open one, its correctness might well be disputed. So, too, it seems to be settled by the weight of authority that the legislature may not only delegate this power of levying taxes to aid in the construction of a railroad to municipal corporations, but may also, by the exercise of its original power of taxation, directly impose such tax upon any territorial division of the State, to aid in the construction of a railroad supposed to be of special advantage to the people residing within such territorial division, provided a majority of those people have signified their assent to the imposition of such a tax.

Indeed, some of the authorities hold that the tax may be imposed without the consent of the inhabitants of the territorial division upon which the tax is imposed. But we are not prepared to go to that extent. What is said in the opinion of the Chief Justice in the case of *State* v. *Whitesides, supra,* is not to be regarded as a decision that such a tax may be imposed directly by the legislature without the consent of the people of the particular locality to be affected thereby, but simply as a statement of the fact that some of the authorities go to that extent. Except for governmental purposes proper, we do not think that the legislature has the power to impose a tax upon the people of any particular locality or territorial subdivision of the State without their consent. In this case, however, such consent was given, and that is the avowed basis upon which the act of 1888 rests. It is argued, however, that such consent has only been manifested by an election held without authority of law, and hence should

not be regarded.    It seems to us that it is not at all material how
the assent of the people has been given.    All that was necessary
was that the legislature should be satisfied that consent had been
given and the terms of the act, especially the preamble, show
plainly that they were satisfied of that fact.

The only remaining inquiry is whether the respondent, Neely,
had in his hands as county treasurer any funds applicable to the
payment of the coupon held by the relator.    By the 2d section
of the act of 1888 it is provided "that no tax shall be levied
under the provisions of this act to pay the interest on any town-·
ship bond until the railroad in aid of which they were subscribed
shall be completed through such township and accepted by the
railroad commissioners;" and the section goes on to provide that
it shall not be construed to authorize the levy or collection of any
tax to pay any interest which had accrued prior to the comple·
tion of the road through any township and its acceptance by the
railroad commissioners, and if any such tax had been collected,
it should be refunded to the taxpayers.    In the return it is stated,
and this fact is not traversed, that the road was not completed
through Cherokee township and accepted by the railroad commis-
sioners until the 21st day of December, 1888; and as it is not
alleged, and does not appear, that any tax has been levied or col-
lected since that date, we do not see how it is possible for any
funds to be in the hands of the respondent applicable to the cou-
pon held by the relator under the terms of the act.    Any taxes
that may have been collected by the county treasurer under the
provisions of the act of 1883 were illegally collected, as that act
has been declared unconstitutional; and this is plainly recognized
by the legislature in passing the act of 1888, as it is therein
required that the taxes thus illegally collected shall be refunded
to the taxpayers.

The act of 1888 does not purport to validate the previous
illegal action of the corporate authorities of the townships, but
the legislature then, by the exercise of its own legislative power,
fixed upon the township a debt, merely referring to the bonds
previously issued without authority as a convenient means of
designating the amount of such debt with the time when it should
become payable, the rate of interest, and the times when such

interest should become payable, and provided then for the levy and collection of taxes to pay the same, with the express provision that no such tax should be levied until after the completion of the road, as above stated. It is quite clear, therefore, that when these proceedings were instituted, the respondent had no funds in his hands which, under the provisions of the act of 1888, could be applied to the payment of the coupon held by the relator, and upon this ground the application for the writ of *mandamus* must be refused.

The judgment of this court is, that the rule to show cause be discharged, and the petition be dismissed.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE MCGOWAN. I concur. The meaning of the opinion of the court being that there is no necessity for the issue of any new bonds; but "the debt" fixed upon the several townships by the act of 1888 shall be represented by the bonds heretofore issued, to be paid according to the provisions of the act; and I am authorized to say that such is the view of the other members of the court.