is still liable thereon; that the corporation became insolvent; and that the plaintiff, one of its creditors, recovered judgment against it in an Ohio state court, upon which judgment execution was returned unsatisfied. The complainant now seeks, by this bill, in behalf of itself and the other creditors, to compel payment by the defendant of the amount of said subscription to the capital stock. No judgment has been recovered against the railroad corporation in the state of New York. In the three cases of *Claflin* v. *McDermott*, 12 Fed. Rep. 375; *Walser* v. *Seligman*, 13 Fed. Rep. 415; and *National Tube-Works Co.* v. *Ballou, ante*, 749,—Judge WALLACE held that a creditors' bill in this court could not be sustained which was based only upon a judgment obtained against his debtor in a state court at the place of his domicile, in another state, and upon an unsatisfied execution issuing out of that court, no judgment having been recovered in this state. No distinction of importance is perceived, and none has been pointed out, between the last two cases and this case. The bill does not seem to be authorized by any statute which permits the liability to be enforced by an immediate resort to a court of equity in case of the insolvency of the corporation. In the *Tube-Works Co. Case* the judge says that he doubts whether a too technical view has not been adopted in the preceding cases, and hopes that the last case may be taken to the supreme court for review, which has been done. Unless a valid distinction can be shown between the case at bar and the preceding cases, the demurrer must be sustained, in the present state of the decisions in this circuit. The demurrer is sustained.

---

MASSACHUSETTS & S. CONST. Co. *v.* TOWNSHIP OF CHEROKEE *et al.*

*(Circuit Court, D. South Carolina. June 23, 1890.)*

1. RAILROADS—MUNICIPAL AID—DELIVERY OF BONDS.
    18 St. at Large S. C. 366, authorized certain townships to issue bonds in aid of a railroad, which was done; and they were deposited with a trust company to be delivered to complainant, which was building the railroad, when the road was shown to be complete by certificate of its engineer, indorsed by the chairman of county commissioners of the county in which the township was. The chairman refused to make such indorsement on the strength of a decision of the state supreme court that the issue of bonds was void, as there was no law conferring on townships corporate functions, they being merely territorial divisions. But thereafter the legislature passed an act (20 St. at Large, 12) expressly recognizing the bonds as a township debt, and authorizing the levy of a tax to pay them. *Held* that, as the road had been completed, the delivery of the bonds to complainant should be decreed.

2. APPEAL—BOND—AMOUNT.
    On appeal from such decree for the specific delivery of the bonds, the amount of the *supersedeas* bond, under supreme court rule No. 29, will be fixed to cover the coupons already due and to mature in four years, with 7 per cent. interest, 10 per cent. damage on the aggregate of interest, and the costs.

In Equity.
*Lord & Hyde* and *James N. Hart*, for complainant.
*C. R. Miles*, *Ira B. Jones*, and *W. B. Wilson, Jr.*, for defendants.
Before BOND and SIMONTON, JJ.

SIMONTON, J.   In 1878 the general assembly of South Carolina incorporated the Georgetown & North Carolina Narrow-Gauge Railroad Company.   This act was amended in 1882, 1883, and 1885.   The only amendments which bear on this case are one by which the name of the corporation was changed into that of the Charleston, Cincinnati & Chicago Railroad Company, and the one providing that townships, on certain conditions, were authorized to subscribe to this road.   This last amendment is in these words, (18 St. at Large S. C. p. 366:)

"Sec. 11. It shall and may be lawful for any county or township interested in the construction of the said railroad to subscribe to its capital stock such sums as a majority of the voters voting at an election held for that purpose may authorize the county commissioners to subscribe, which subscription shall be made at 7 per cent. coupon bonds, payable twenty-five years after the date thereof, and to be of the denomination of $100, $500, and $1,000."

"Sec. 14. Such counties and townships as shall vote for subscriptions are hereby created bodies politic and corporate under their respective names, and are vested with powers necessary for carrying out the provisions of this act; and the county commissioners of any county so incorporated, or of any county in which shall be situated any township so incorporated, are hereby declared to be the corporate agents of such county or township."

At the time of the passage of this act, there was no provision in the constitution of South Carolina, or in any act of assembly of that state, conferring any corporate or other function or duty on townships.   They were simply territorial names, covering a certain portion of a county, used for convenience only.   On 5th September, 1885, an election was held under this act in Cherokee township, York county, and a subscription of $25,000 voted to the capital stock of this railroad company. Thereupon the county commissioners of York county made the subscription, and prepared and executed the bonds.   By an agreement made between the railroad company, the Massachusetts & Southern Construction Company, (the complainants,) and the county commissioners, these bonds were placed in the hands of the Boston Safe-Deposit & Trust Company, to be delivered to the complainant as the construction progressed between certain points in this township, so that, upon the completion of the road through the township, all the bonds should be delivered.   The delivery was to be made upon the certificate of the engineer of the complainants that the road had been so completed, indorsed by the chairman of the board of the county commissioners.   Under this agreement the road was built through this township.   It was accepted by the railroad commissioners on the 1st day of December, A. D. 1888.   Sixteen thousand six hundred dollars of bonds have been delivered to the complainants, leaving $8,400 still in the hands of the Boston Trust Company.   The chairman of the county commissioners of York county refuses to indorse the certificate of the engineer that the road has been completed through Cherokee township, although he admits this fact to be true.   The Boston Trust Company have indorsed the bonds as required by the agreement, and have them in hand ready for delivery.   In fact the company is anxious to deliver them, and are only awaiting the action of the chairman of the county commissioners.   They have no claim upon, and no inter-

est whatever in, the bonds. The bill is against the township, setting out these facts, praying a specific performance on the part of the township of its contract, and the delivery to complainant of these bonds, and for general relief.

The refusal of the chairman of the board of county commissioners is based on this ground: The supreme court of South Carolina, at April term, 1888, after these bonds had been prepared, signed, and deposited with the Boston Trust Company, decided that township bonds prepared and issued under the provisions of an act, in this respect, like the one providing for these bonds, were issued without constitutional authority, and were void. *Floyd* v. *Perrin*, 30 S. C. 1, 8 S. E. Rep. 14. It may be noted that the chairman of the county commissioners was not bound, under the agreement, to express or pass any opinion on the validity of these bonds, nor was he to exercise any discretion whatever. All that he was to do, under the agreement, was to state a fact, to-wit, that the railroad was built through the township. The consequences of that fact he was in no sense responsible for, as the board had already done everything towards the issue of the bonds upon the occurrence of the fact he was called upon to state. The case of *Floyd* v. *Perrin* having been decided, the legislature passed in December, 1888, an act to provide for the payment of township bonds issued in aid of railroads in this state. 20 St. at Large, 12. The constitutionality of this act has been sustained in *State* v. *Whitesides*, 30 S. C. 579.[1] The act recites that certain townships in this state have by vote expressed willingness to be taxed to pay bonds issued by them in aid of certain railroads, which bonds, by reason of a defect in the acts authorizing their issue, have been declared invalid. For the purpose of carrying into effect the expressed will of the people of these townships, it is enacted that the township bonds heretofore issued by county commissioners, as the corporate agents of any township in this state, in aid of any railroad, by vote of the township, are declared to be debts of the township which authorized the issue of the same, the interest and principal to be paid, by a tax levied annually on such township for that purpose, to the holders of such bonds, as the interest may become due according to the terms thereof. All dividends on stock received for such bonds are pledged to the payment of such interest. No tax shall be levied until the road is completed through the township, and accepted by the railroad commissioners, and no interest which accrued on said bonds before such completion is to be paid. This act distinctly recognizes and imposes on the townships these bonds as a debt of the township to be paid by the taxes levied on it, and not a debt to take effect from the passage of the act, but a debt payable, as to its interest, from the day the road is completed through the township, and is accepted by the railroad commissioners. The bonds issued before the act was passed are recognized as in existence. The issue of no new bonds is required, and such bonds are declared to be the debt of the township, according to their terms. That is to say, the bonds fix the amount of

[1] 9 S. E. Rep. 661.

the debt, the interest payable thereon, the time for the payment of interest, the time for payment of principal, and the person to whom payable. As the taxes are to be levied annually, and when collected to be paid to the holders of said bonds, such holders are entitled to the possession of the bonds as muniments of title. Such is the result of the opinion of the supreme court of South Carolina in *State* v. *Neely*, 30 S. C. 605, 9 S. E. Rep. 664. If, as is contended, this is but the expression of an opinion upon a matter not necessary to the decision of a question before the court, and so *obiter dictum*, we may construe the act for ourselves, and, doing so, have reached the same conclusion. The railroad having been completed through the township, the complainant is entitled to possession of the bonds.

But the defendant insists that this right cannot be enforced under these proceedings. It objects to the jurisdiction of the court because the defendant the Boston Trust Company is a citizen of the same state as the complainant. But no relief is asked against that company, no delict of the company has been set up, no act of it complained of. The pleadings and testimony all show that it is a mere stakeholder, with no interest whatever in these bonds,—with no interest in the controversy as to their validity. It is called in to see merely that the defendant township does an act in fulfillment of its obligation to complainant. Then the trust company can complete its duty. Foster's Fed. Prac. § 18, p. 26.

It is said that the chairman of the board and the clerk of the board should be parties. The former is one of the agents of the defendant corporation, and the latter is his agent. The only act they can do is, as such agents, for and on behalf of the principal, to certify that the road has been completed through the township. Surely, when the principal is present, the court can deal with it directly, can ascertain as a matter of fact whether the road has been completed through the township, and, if upon this fact depends the delivery of the bonds to the complainant, can order and direct such delivery.

It is also alleged that complainant in this case is the assignee of a corporation of the state of South Carolina, and cannot sue a citizen of the state of South Carolina in this court. The relief sought in the bill is the possession of certain bonds to be held and used as muniments of title elsewhere. The bill does not seek to collect these bonds, or coupons on them, or to collect the debt or any interest on it. It comes wholly within *Deshler* v. *Dodge*, 16 How. 622.

The question is as to the form of a decree. The bonds are to be delivered to complainant when the road has been completed through the township, and when the agent of the defendant certifies to that fact on the engineer's certificate. The latter is in the record. The defendants' agent refuses to indorse it. The fact remains, however, that the road has been completed through the township. The certificate providing for the delivery of the bonds was for the mutual convenience of the parties. The court cannot permit that which was intended for mutual convenience to be used by one of the parties as an unreasonable obstruction. The act of the chairman in indorsing the certificate would be an act binding

his principal as to the fact of the completion of the road. For this purpose only would it be desirable. The principal being in court, the decree can bind it as effectually to the admission of this fact as his certificate would. It is ordered that the Boston Trust Company deliver to complainant the bonds properly certified.

BOND, J., concurs.

### MOTION TO FIX THE AMOUNT OF THE SUPERSEDEAS BONDS.

SIMONTON, J. The question is on the amount of the *supersedeas* bond to be given in each of these cases, an appeal in each of them having been allowed. If these cases had been brought to enforce a subscription in bonds, and if the court had assumed jurisdiction and granted this relief, the defendant could not obtain a *supersedeas* without giving security for all coupons and interest already matured, and such as may mature during the pendency of the appeal, 10 per cent. by way of damages, and the costs of the cases. This would be the extreme limit of appellees' rights, under rule 29 of the supreme court. But the actions were brought for the specific delivery of bonds and coupons now in the hands of the Boston Safe-Deposit & Trust Company as muniments of title, for the purpose of presenting the coupons for payment to the county treasurer under the act of the legislature of South Carolina, December, 1888. The granting of a *supersedeas* on appeal prevents the delivery of the bonds and coupons. The result is that, not being able to present its coupons to the county treasurer, the complainant is kept out of its money on them, payable under that act. The cases, therefore, come under the latter clause of rule 29. We must secure the complainant indemnity for the use and detention of this money, the costs of the cases, and just damages for delay, and costs and interest on the appeal. Indemnity for the detention of money, damages therefor, are measured by interest during the detention. Let it be ascertained what coupons in each case have already matured on these bonds awaiting delivery, and what coupons on said bonds will mature during four years from second Monday in October next. Let interest at the rate of 7 per cent. per annum be calculated on these coupons up to the period of four years from second Monday in October, and 10 per cent. damages on the aggregate of interest so ascertained in each case, and the costs of the case. In each case let a bond be prepared, with surety, for the aggregate so ascertained in each case; and when such bond is approved, if presented within the time allowed by law, it shall operate as a *supersedeas*.

NOTE. Several other cases presenting precisely the same question as in the *Case of Cherokee Township*, but against other townships, were submitted at the same time with this case.