## GRANNISS *v.* CHEROKEE TOWNSHIP OF YORK COUNTY.

*(Circuit Court, D. South Carolina.* September 11, 1891.)

1. TOWNSHIP BONDS—LEGALIZING ACT.
   Act S. C. Dec. 1888, (20 St. 12,) declaring all township bonds theretofore issued in aid of a railroad to be a debt of the township, authorizing the levy of a tax to pay it, and providing that the bonds might be used as evidence of the amount and character of such debt, impressed such debt on the township, *proprio vigore,* and it is liable therefor, although the act authorizing the issue of the bonds was unconstitutional, and the bonds void.

2. SAME—INTEREST COUPONS.
   Where an interest coupon covers a period before and after the completion and acceptance of the road, only so much of the interest thereon as was earned after such completion can be recovered under Act S. C. Dec. 1888, (20 St. 12,) providing that no tax shall be levied to pay any interest which may have accrued on such bonds prior to completion and acceptance of the road.

3. SAME—VOLUNTARY PAYMENT—SET-OFF.
   Voluntary payments made upon invalid coupons, prior to completion and acceptance of the road, cannot be set off against those maturing afterwards.

At Law.
*Hart & Hart,* for plaintiff.
*Wilson, Wilson & McDow,* for defendant.

### FINDINGS OF FACT.

SIMONTON, J. 1. The general assembly of South Carolina by an act ratified 21st December, 1883, authorized the inhabitants of townships interested in the construction of a railroad then known as the "Georgetown & North Carolina Narrow Gauge Railroad," subsequently called the "Charleston, Cincinnati & Chicago Railroad Company," to subscribe to its capital stock by a vote for that purpose. All townships whose inhabitants voted so to subscribe were declared to be bodies politic and corporate.

2. Pursuing the provisions of this act, Cherokee township, in York county, on 5th September, 1885, voted a subscription to the capital stock of this railroad of $25,000, and coupon bonds payable to bearer were issued therefor in various denominations, coupons for interest at the rate of 7 per cent. per annum.

3. Up to this period Cherokee township had well-known and definitely ascertained boundaries; but it had no corporate existence except such as was created by this act by virtue of this subscription.

4. These bonds of Cherokee township were placed in the custody of the Boston Safe-Deposit & Trust Company, under an agreement stipulating that $16,600 of them should be delivered to the Massachusetts & Southern Construction Company upon official certificate that the road was completed to Blacksburg, a point within that township. This construction company was under contract with the railroad company to build its road.

5. The road having been completed to Blacksburg, the $16,600 of bonds were delivered to the construction company in September, 1886, and were by it delivered to P. P. Dickinson, the subcontractor who had

built the road to that point.   Sixteen of these bonds were $1,000 each, numbered from 15 to 30, inclusive; one for $500, numbered 14; one for $100, numbered 1.   The coupons maturing 1st January, 1887, and 1st January, 1888,—in all $1,231.02,—were paid to Dickinson.   The payment of the coupons maturing afterwards was refused.

6.  The coupons in suit were cut from these bonds, and came into the possession of the plaintiff by purchase, many of them being past due at the time of transfer.   This is the statement in detail:   One coupon, —No. 14,—cut from bond No. 14, due January 1, 1889, for $35; 14 coupons, numbered 16 to 19, and 21 to 30, inclusive, payable 1st January, 1889, for $70 each; the same number of coupons from the same bonds,—that is to say, 1 for $35, and 14 for $70,—due January, 1890; and precisely the same number of coupons, payable January 1, 1891, to-wit, 1 for $35, and 14 for $70 each.

7.  The supreme court of South Carolina on 30th November, 1888, in *Floyd* v. *Perrin*, 30 S. C. 1, 8 S. E. Rep. 14, declared township bonds issued as subscription to a railroad under the provisions of an act in all respects like that under which these bonds were issued invalid, that provision in the act being without constitutional authority; and on the same day, in *Whitesides* v. *Neely*, 30 S. C. 32, 8 S. E. Rep. 27, applied the same conclusion to these bonds of Cherokee township.

8.  In December, 1888, the general assembly of that state passed an act for the payment of township bonds issued in aid of railroads in this state.   20 St. at Large, 12.   By this act the legislature declared all township bonds theretofore issued in aid of a railroad debts of such township, and authorized the levy of an annual tax to pay the same, with this proviso: that no tax should be levied to pay the interest on any such bond until the road shall have been completed and accepted through the township issuing them.   Nor shall any tax be levied to pay any interest which may have accrued on such bonds prior to such completion and acceptance.   This railroad was completed through Cherokee township and accepted 25th December, 1888.   The constitutionality of this act has been declared by the supreme court of South Carolina in *State* v. *Whitesides*, 30 S. C. 581, 9 S. E. Rep. 661; *State* v. *Neely*, 30 S. C. 588, 9 S. E. Rep. 664,—with respect to these bonds of Cherokee county.

### CONCLUSIONS OF LAW.

The defenses set up are these:

1.  That the defendant is not a corporate body under the law of South Carolina.   The supreme court of South Carolina in *Floyd* v. *Perrin*, *supra*, has decided that it is a corporate body; and in *State* v. *Neely*, 30 S. C. 602, 9 S. E. Rep. 664, it dealt with this same township as a corporate body.

2.  That the provisions of the act of assembly under which these township subscriptions were made and these bonds issued violate the constitution of the state of South Carolina, and that the bonds are utterly void; that no subsequent act of the legislature can give them validity.   This has also been decided by the supreme court of South Carolina in the

cases already quoted. The subscriptions and the bonds were both invalid; but the legislature, in the act of December, 1888, *proprio vigore* impressed upon each township the debt approved by the vote of its inhabitants, and allowed the bonds to be used for the purpose of showing the amount and character of such debts, the rate of interest thereon, the time for payment of interest and principal. It further provided for the levy of an annual tax, payable to the persons holding and presenting coupons on these bonds.

These decisions of the supreme court of South Carolina are followed by this court. It has been decided in numberless cases by the supreme court of the United States that the construction placed by the courts of last resort in the several states upon their own statutes and constitution will be followed by the United States courts. See cases in note to *Burgess* v. *Seligman*, 107 U. S. 34, 2 Sup. Ct. Rep. 22. In this case the supreme court did not follow the rule, because when the case was tried in the circuit court there had been no decision of the state court upon the subject. Page 35 U. S., and page 23 Sup. Ct. Rep. And in *Carroll Co.* v. *Smith*, 111 U. S. 563, 4 Sup. Ct. Rep. 539, quoted and relied upon in the argument, this same condition of things existed; and besides, the court followed two decisions of the supreme court of the United States, giving construction to language used in the constitution of Missouri identical with that used in the constitution of Mississippi, and construed in *Carroll Co.* v. *Smith*.

3. That all coupons accruing anterior to the completion of the road through the township are null and void; and that no tax can be levied, nor can the proceeds of any levy be applied to their payment. This is established in the provisions of act of assembly of 1888.

4. The last defense made by way of amendment to the answer is the corrollary of this. The coupons of 1887 and 1888, on bonds from which plaintiff's coupons were cut, were paid to Dickinson, from or through whom plaintiff obtained his coupons, many of which were past due when they came into his possession. As against such past-due coupons the defendant can set up the sums paid upon the invalid coupons of the bonds to which they respectively belonged, and can claim credit for them.

The payment of these invalid coupons was made without any compulsion whatsoever. It was purely voluntary, and cannot be recovered. *Lamborn* v. *Commissioners*, 97 U. S. 185; *Railroad Co.* v. *Commissioners*, 98 U. S. 541; *Little* v. *Bowers*, 134 U. S. 549, 10 Sup. Ct. Rep. 620; *Smith* v. *Hutchinson*, 8 Rich. Law. 260. So it cannot be set off as proposed. Apart from this, there is an essential difference between the ordinary money bond passing by assignment and the coupon bond payable to bearer In the ordinary money bond the interest grows out of and is inseparable from the principal. Every payment made upon the bond by the obligor goes to the reduction of the amount due upon it, and affects every holder of the bond, however remote. It must be deducted from the bond when full settlement is made by the obligor, and is a part of such settlement. In the coupon bond the principal and each install-

ment of interest are separate promises,—several debts. *Clark* v. *Iowa City*, 20 Wall. 589; *Koshkonong* v. *Burton*, 104 U. S. 668. The purpose of the coupons, with their necessary result, is that they can be cut from the bonds, and each of them be put in separate circulation, distinct from it and from each other. *Aurora City* v. *West*, 7 Wall. 105. When the bond at its maturity is presented for payment, the settlement is effected by paying the principal of the bond and such of the coupons as may remain attached to it. The cut coupons neither enter into nor are they regarded in such settlement. Each cut coupon is a negotiable instrument, protected by the general mercantile law applicable to such instruments. *Gelpcke* v. *Dubuque*, 1 Wall. 177; Jones, Ry. Secur. § 320, and cases cited in note 2. Each of them is affected by the original invalidity of the bond. *Bissell* v. *Spring Valley Tp.*, 124 U. S. 225, 8 Sup. Ct. Rep. 495. As between each other, they are not affected except by their own equities, growing out of the individual coupon. *Cromwell* v. *County of Sac*, 94 U. S. 351. Thus some of the coupons, from being improvidently issued, may be invalid; or, as between the holder of the coupon and the maker of the bond, there may be considerations affecting their payment. But these considerations will not, for that reason, affect other coupons, unless they also exist with regard to such coupons, treated as distinct instruments. The coupons of 1887 and 1888 cut from the same bonds as the coupons now in suit may have been improperly paid to the several holders of them. This will not prevent the payment of the present coupons in the hands of other holders. The plaintiff in this case holds his coupons either by delivery from P. P. Dickinson or purchased in the market. There is no reason to doubt the *bona fides* of the transaction. The payment of the invalid antecedent coupons cannot be set off against the coupons now in suit.

Let the plaintiff have judgment upon the coupons maturing on January 1, 1889, upon so much of their face value as the period between December 25, 1888, (the date of the completion of the road through the township,) and January 1, 1889, bears to the whole year,—that is to say, as 6 is to 365; and upon all the coupons maturing January 1, 1890, —in the aggregate $1,015; and upon all the coupons maturing January 1, 1891,—in the aggregate $1,015. Let the clerk of this court make the statement, and enter it in the judgment, allowing interest at the rate of 7 per cent. per annum on the sums due in January, 1889, January, 1890, January, 1891, respectively, and the costs of this action.