Simonton, District Judge.
These two petitions were heard together. Several townships in South Carolina had subscribed to the capital stock of the Charleston, Cincinnati & Chicago Railroad Company, the subscription payable, in coupon township bonds. The townships were created corporations and given the power to subscribe in this way by the *679 act chartering the railroad company. This railroad company had contracted with the Massachusetts & Southern Construction Company to build and equip their road. The township bonds were to be used in paying for such construction. In 1888, in a cause entitled Floyd v. Perrin, 30 S. C. 2, 8 S. E. Rep. 14, the supreme court of South Carolina pronounced invalid the provisions of a railroad charter similar to that of the Charleston, Cincinnati & Chicago Railroad Company, and declared township bonds issued thereunder invalid. This question being of grave importance both to the railroad company and to the construction company, R. A. Johnson, who was the general manager of both companies, engaged the professional services of these petitioners, who are both excellent lawyers, to devise and take such steps as would lead to the validation of the township bonds subscribed in aid of the railroad company. Although nothing clearly definite appears in the correspondence and conferences with Johnson, both of these gentlemen believed that they were retained by and for the railroad company and by the construction company. They rendered important, valuable, and successful service. The township bonds were validated by an act of the legislature, in the passage of which they were largely instrumental. The supreme court sustained the constitutionality of the act in a cause brought and argued by them. State v. Neely, 30 S. C. 598, 9 S. E. Rep. 664. The result is that the township bonds have been given value, and, as petitioners contend, have been largely used in the construction of the road. They now present their claim for services,—$6,000, each,—and ask that it be allowed and paid in priority to the mortgage lien. The counsel for the the receiver and for the mortgage bondholders deny that these gentlemen were retained for the railroad company, or that their service benefited the railroad company. They insist that the retainer was for and on behalf of the construction company, to whom all these township bonds had been assigned. Be this as it may, and assuming, for the purposes of this case, that the facts are as stated by the petitioners, can we displace in their behalf the vested lien of the mortgage? Fosdick v. SchaU, 99 U. S. 235, led the way to the displacement of the mortgage lien, permitting certain favored claims to be paid before the mortgage debt, either out of the income or out of the proceeds of sale. But the courts have carefully guarded themselves from extending these claims, which were for materials, supplies, and labor necessary for keeping the railroad a going concern, and have expressly refused to consider any claim originating more than six months before the appointment of the receiver. The services in this case were rendered nearly, if not quite,' two years before the appointment of a receiver. Indeed, the supreme court of the United States, in Kneeland v. Loan & T. Co., 136 U. S. 97,10 Sup. Ct. Rep. 950, have felt the necessity of warning the profession against erroneous views as to the effect of Fosdick v. Schall:
“No one is bound to sell to a railroad company, or to work for it, and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens. *680 It is the exception, and not the rule, that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens.”
Counsel for the petitioners urge upon the court the consideration of the value of these services in securing the means for constructing the road. But the services rendered by the petitioners are not within that favored class protected in Fosdick v. Schall. Indeed, if they had obtained and supplied the money used in constructing the road, this would not have helped them. Wood v. Trust, etc., Co., 128 U. S. 416, 9 Sup. Ct. Rep. 131; Cowdrey v. Railroad Co., 93 U. S. 352; Dunham v. Railway Co., 1 Wall. 267; Railroad Co. v. Wilson, 138 U. S. 501, 11 Sup. Ct. Rep. 405.
Nor does it affect the question that their services incidentally benefited the mortgage creditors, and added to the value of the property covered by the mortgage. There were no contract relations with these creditors. In Hand v. Railroad Co., 21 S. C. 162, the law is clearly stated:
“No one can legally claim compensation for voluntary services to another, however beneficial they may'be, nor for incidental benefits and advantages to one flowing to him on account of services rendered to another by whom he may have been employed. Before a legal charge can be sustained, there must be a contract of employment, either expressly made or superinduced by the law or the facts. ”
See Bound v. Railway Co., 51 Red. Rep. 60.
The petitions are dismissed.