STATE *EX REL.* MORSE v. CORNWELL.

1. TOWNSHIP DEBT—ASSESSED VALUE.—Under the constitutional limitation, that "any bonded debt hereafter incurred by any * * * political division of this State shall never exceed eight per centum of the assessed value of all the taxable property therein," the "assessed value" means the tax assessment made by the proper authorities, completed and of record at the time that the debt is created, and does not refer to an assessment made within the same fiscal year, but not ascertained until after the debt was created. A debt imposed by statute upon a township in excess of the existing tax assessment, but within the limit of the assessment for that fiscal year afterwards ascertained, *held* to be unconstitutional and void.

This was a petition to this court by the State of South Carolina on the relation of R. M. Morse against J. D. Cornwell and others, as county commissioners of York County, dated April 12, 1893. A rule to show cause was issued, a return made thereto, and the hearing was had May 15.

*Messrs. Lord & Burke*, for petitioners.

*Messrs. D. E. Finley, W. B. McCaw*, and *Ira B. Jones*, contra.

November 13, 1893. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. This is an application addressed to this court in the exercise of its original jurisdiction for a mandamus to compel the respondents, as the corporate agents of Broad River Township, in York County, to levy a tax upon the taxable property of said township sufficient to pay certain past due coupons on bonds issued by respondents as

such corporate agents, of which the relator is the *bona fide* holder. Inasmuch as there is but a single question presented for the determination of the court, we need not go into any detailed statement of the pleading; but it will be sufficient for us to state such conceded facts and admitted propositions of law out of which the question arises which we are called upon to decide. It is conceded that the amount of the bonds here in question is the sum of twenty-four thousand dollars, and if the same is a valid debt of Broad River Township, then such debt was incurred on the 22d day of December, 1888, on which day the act was passed purporting to fix such debt upon said township. It is likewise conceded that said township "is a municipal corporation or a political division of the said State, within the provisions of section 17, of article 9, of the Constitution of the State of South Carolina." That constitutional provision, as may be seen by reference to the acts of 1884 (18 Stat., 689), reads as follows: "Any bonded debt hereafter incurred by any county, municipal corporation, or political division of this State shall never exceed eight *per centum* of the assessed value of all the taxable property therein."

It is very obvious that the legislature had no power to fix upon this township any debt in excess of the limit prescribed by the constitutional provision just quoted; and hence if the amount of twenty-four thousand dollars, purporting to be fixed upon Broad River Township by the act of 1888, above cited, was in excess of eight per centum of "the assessed value of all the taxable property therein," at the time the act was passed, it follows necessarily that said act, in so far as it purported to fix such debt upon said township, was unconstitutional and void; for it is admitted in the argument, and properly admitted, that the time when the debt purports to have been contracted, is the time to which reference must be had in ascertaining whether the constitutional limit has been exceeded. The inquiry, then, is, was the sum of twenty-four thousand dollars in excess of eight per centum of the assessed value of all the taxable property in Broad River Township on the 22d December, 1888. It being conceded that the assessed value of all the taxable property in said township, as

ascertained by the next preceding assessment which had been
made in the early part of the year 1888, for the fiscal year of
1887–8, before the act purporting to create the debt was passed,
amounted to $271,350, while the assessed value of all such
property, as ascertained by an assessment made in February,
1889, for the fiscal year 1888–9, after the passage of said act,
amounted to $314,400; so that it is quite clear, if the former as-
sessment be taken as one of the elements of the calculation, the
proposed debt exceeded the constitutional limit, while, if the
latter assessment be adopted as one of the elements of the cal-
culation, then there was no such excess. The real question,
therefore, and the only one discussed in the argument, and the
only one which we propose to decide, is, which of these two
assessments should be properly taken as the basis of the calcu-
lation?

In the first place, it seems to us that there is an insuperable
practical obstacle in the way of adopting the assessment made
*after* the debt purports to have been contracted, as contended
for by the counsel for petitioner in this case; for, if so, it would
be impossible for persons desiring to purchase the bonds, as
well as for the taxpayers' of the township, to know whether
the bonds were valid or not; as they would have no means of
ascertaining what would be the assessed value of all the tax-
able property in the township until after the next assessment
should be made and finally completed; and it might be, and
probably would be, months before one of the essential facts
necessary to the determination of the question of the validity
of the bonds could possibly be ascertained. Again, the con-
struction contended for by the relator would open the door to
fraud and oppression, for a majority desirous of fixing a bur-
densome debt upon the township might exert the power which
majorities always possess to increase unduly the assessments
for the fiscal year, in order to bring the amount of the debt
proposed to be contracted within the constitutional limit, re-
lying upon the same power to reduce subsequent assessments,
and thus practically defeat the wise purpose of the constitu-
tional provision. For, as was said in *State ex rel. Vandiver* v.
*Tolly*, 37 S. C., 551: "The manifest object of this provision was

to limit the power of these subordinate branches of the government to contract debts, and, like most constitutional limitations, its purpose was to protect minorities by depriving a mere majority of the power to impose what might prove to be grievous burdens upon the property of such taxpayers as might be in the minority." Indeed, the reasoning in that case goes far to support the construction contended for by respondents in this case, though we do not claim that the point there decided is conclusive of the question here presented.

As was further said in that case, "the language used in the constitutional provision is not eight per centum of the actual or real or market value of the taxable property, but the language is, 'of the assessed value of all the taxable property therein.' This word 'assessed' has, and had at the time of the adoption of the constitutional provision now under consideration, a well defined meaning when applied to taxable property, and the framers of that provision must be assumed to have used it in the same sense in which it was used in the various acts of the legislature relating to the subject of taxation. It must be regarded as meaning the value placed upon property for the purpose of taxation by officials appointed for that purpose." In all this, reference is had to the past and not to the future—to an assessment already made and completed and entered upon the proper record. The word "assessed" in the constitutional provision being in the past tense, implies the same thing. But what seems to be absolutely conclusive is this: It must be assumed that the legislature, or any subordinate agency of the government invested with power to contract a debt, would be careful, in exercising such power, not to go beyond the limits prescribed by the Constitution, and if the body, when contracting the debt, has no means of ascertaining whether the amount is within the prescribed limit, which could not be done until another assessment has been made, it is very obvious that such care could not be exercised, in issuing the bonds or contracting the debt, before such new assessment is made.

It seems to us clear, therefore, that the words, "assessed value," as used in the constitutional provision now under consideration, must be regarded as meaning the assessed value as

ascertained by the next preceding assessment appearing on the tax books of the county, and cannot mean any assessment to be made subsequent to the time when the debt in question purports to be contracted. This view is directly and fully sustained by the Circuit Court of the United States for the District of South Carolina in the case of *The Mass. & Southern Construction Co.* v. *Crane Creek Township, Lancaster County,* where the identical question here presented was distinctly decided in accordance with the view which we have adopted, as appears by a certified copy of the decree of Judges Bond and Simonton, left with us at the hearing.[1] It seems to us, also, that our view is supported by the case of *Dixon County* v. *Field,* 111 U. S., 95, where the late Mr. Justice Matthews used the following language, quoted with approval by Mr. Justice Gray in *Sutliff* v. *Lake County Commissioners,* 147 U. S., 236:

"In the present case, there was no power at all conferred to issue the bonds in excess of an amount equal to ten per cent. upon the assessed valuation of the taxable property in the county. In determining the limit of power, there were necessarily two factors—the amount of the bonds to be issued and the amount of the assessed value of the property for purposes of taxation. The amount of the bonds issued was known. It was stated in the recital itself. It was $87,000. The holder of each bond was apprised of that fact. The amount of the assessed value of the taxable property in the county is not stated; but, *ex vi termini,* it was ascertainable in one way only, and that was by reference to the assessment itself, a public record equally accessible to all intending purchasers of bonds, as well as to the county officers. This being known, the ratio between the two amounts was fixed by an arithmetical calculation. No recital involving the amount of the assessed taxable valuation of the property to be taxed for the payment of the bonds can take the place of the assessment itself, for it is the amount, as fixed by reference to that record, that is made by the Constitution the standard for measuring the limit of the municipal power. Nothing in the way of inquiry, ascertainment or determination as to that fact, is submitted to the county officers.

[1] 45 Fed. Rep., 336.

They are bound, it is true, to learn from the assessment what the limit upon their authority is, as a necessary preliminary in the exercise of their functions, and the performance of their duty; but the information is for themselves alone. All the world besides must have it from the same source, and for themselves. The fact, as it is recorded in the assessment itself, is extrinsic, and proves itself by inspection, and concludes all determinations that contradict it."

Now, while the question considered in that case was not the question presented here, but was rather a question of the force and effect of the recitals in the bonds, yet it is impossible to read the language which we have quoted without perceiving that it was assumed throughout that the assessed valuation to which reference must be had was the next preceding assessment to the issue of the bonds; and when to this is added the fact appearing in the case, that although the bonds were not issued until July, 1876, and that the assessed valuation referred to in that case was made in the spring of 1875, which continued in force until the spring of 1876, we think we are justified in citing that case in support of our view.

The judgment of this court is, that the petition be dismissed.