### GORHAM v. BROAD RIVER TP.

(Circuit Court, D. South Carolina. June 12, 1901.)

JUDGMENT — RES JUDICATA — STATE DECISION AS BAR TO ACTION IN FEDERAL COURT.

A judgment of the supreme court of a state in an action for a mandamus brought by the owner of township bonds against the commissioners of the county, as statutory agents of such township, to compel the levy of a tax to pay matured coupons, which judgment, on an issue joined as to the validity of the bonds, determined them to be illegal and void, is binding upon a subsequent purchaser of the bonds who is in privity with the former owner as to such judgment, and is a bar to an action brought by him in a federal court to recover judgment against the township on coupons from the same bonds subsequently maturing, since the parties and the subject-matter involved are essentially the same, and the prior judgment, which necessarily established the invalidity of the coupons sued on, was rendered by a court whose jurisdiction was invoked by one by whose action the plaintiff is concluded.

J. E. Burke, for plaintiff.
Wm. D. McCaw and D. E. Finley, for defendant.

SIMONTON, Circuit Judge. This is an action at law, brought by Walter M. Gorham against Broad River township on certain coupons clipped from bonds issued by said township. By the written agreement of the parties to this suit it is tried by the court without a jury. Complying with the rule in such case made and provided (Rev. St. U. S. § 647; Insurance Co. v. Tweed, 7 Wall. 44, 19 L. Ed. 65), the findings of fact are stated, followed by the conclusions of law drawn therefrom.

### Findings of Fact.

(1) The plaintiff, Walter M. Gorham, is a citizen and resident of the state of Pennsylvania. The Broad River township is a corporation created under the laws of the state of South Carolina.

(2) The legislature of South Carolina, by an act approved December 21, 1883 (18 St. at Large, p. 366), amended afterwards (19 St. at Large, p. 38), authorized townships interested in the construction of the Charleston, Cincinnati & Chicago Railroad to subscribe to its capital stock such sums as a majority of the voters in such township voting at an election held for such purpose shall instruct the county commissioners of the county in which such township is to make, the subscription being in 7 per cent. coupon bonds, payable 20 years after date; no election to be held except on request of a majority of owners of real estate in the township. For the purposes of this subscription the township subscribing is declared to be a body politic and corporate.

(3) The Broad River township of York county, being interested in said railroad, as shown by the request of the majority of the

owners of real estate therein, sanctioned by the votes of a majority of the persons voting at an election called for this purpose, authorized the county commissioners of York county to subscribe in its behalf $24,000 in such coupon bonds to the capital stock of said road. The election was held October 17, 1885. The subscription was made on April 28, 1886. The bonds were prepared by the county commissioners, and were signed by them on May 2, 1886, bearing date May 1, 1886.

(4) The bonds, having been executed, were placed by the county commissioners in the hands of the Boston Safe-Deposit & Trust Company, first obtaining a written declaration of the trust under which they were deposited, as follows:

"Upon the presentation to the Boston Safe-Deposit and Trust Company, trustee, of a certificate signed by the engineer of the Massachusetts and Southern Construction Company, indorsed by the chairman of the board of county commissioners for the county of York, whose signature shall be attested by the clerk of said board, that the road is completed, with the track laid, the distance of five miles from the township line between Cherokee and Broad River, twelve thousand (12,000) dollars at par value of said bonds shall, upon order of the said Charleston, Cincinnati and Chicago Railroad Company, be delivered by the said trust company to the Massachusetts and Southern Construction Company; and upon the presentation to the said trustee of a certificate signed by the engineer of the Massachusetts and Southern Construction Company, indorsed as above, that the road is completed, with track laid, within said township, the said trustee shall immediately, upon like order aforesaid, pay over to the Massachusetts and Southern Construction Company the remaining twelve thousand (12,000) dollars."

All matured coupons to be cut from said bonds before delivery, and the construction company to give in exchange for said bonds certificates entitling the township to an issue of a corresponding amount of stock in the railroad company. When the vote was taken on the subscription, the route of the railroad was not through this township. Afterwards, and before the bonds were issued, the route was changed, and made through the township. By express agreement it was declared that the railroad company had no control over these bonds, except by the consent of the Massachusetts & Southern Construction Company, successors to its chartered rights.

(5) The road was completed through the township November 22, 1888. On December 26, 1888, the engineer of the said construction company requested the chairman of the board of county commissioners to make the proper certificates upon the bonds, so that they might be issued and used. This request was refused. The fact was admitted that the road had been completed through Broad River township in accordance with the subscription, and pursuant to the conditions of the several indentures whereby the bonds were placed in trust with the Boston Safe-Deposit & Trust Company. After notification from the trust company that demand had been made on it for the bonds by the construction company, the chairman of the board of county commissioners protested against such delivery, upon the ground that certain conditions had not been fulfilled. Thereupon, on application to this court in 1889, the deposit company was ordered to deliver said bonds, without, how-

ever, in any way passing upon their validity. Massachusetts & S. Const. Co. v. Boston Safe-Deposit & Trust Co., MSS. This order was complied with in 1890.

(6) The bonds, having been assigned to it for value by the railroad company, afterwards came into the possession of the Massachusetts & Southern Construction Company, and were sold by that company. Some of them came into the hands of R. M. Morse, and from Morse they came into the hands of the plaintiff. Among these bonds were bonds for $1,000 each, numbered respectively 18, 19, 20, 25, 26, 27, 28, 29, 30, 31, and 32, and a bond for $500, numbered 8. This was subsequent to November 13, 1893. The agreed statement of facts is that plaintiff is a privy of R. M. Morse, and both R. M. Morse and plaintiff, and all antecedent holders, otherwise than is set forth in the agreement, came into possession of these bonds after the filing of the court decree in Floyd v. Perrin, 30 S. C. 1, 8 S. E. 14, and after the decree of the supreme court affirming the same.

(7) On November 30, 1888, the supreme court of South Carolina filed this decree in Floyd v. Perrin, supra, and therein decided that bonds of townships issued under the authority of a statute in all respects similar to that under which these bonds were issued were null and void under the law of South Carolina, upon the ground that the legislature could not authorize townships to subscribe to and invest in stock of a railroad company so long as such townships were not clothed with any corporate purposes. This decision was very soon afterwards affirmed, and applied to these bonds of Broad River township. State v. Whitesides, 30 S. C. 579, 9 S. E. 661.

(8) On December 22, 1888, the general assembly of South Carolina passed an act entitled "An act to provide for the payment of township bonds issued in aid of railroads in this state." The constitutionality of this act was sustained in State v. Neely, 30 S. C. 587, 9 S. E. 664, 3 L. R. A. 672. The act is in these words:

"Whereas, certain townships in this state have, by their vote, expressed their willingness to subject themselves to taxation for the purpose of paying · bonds issued by them in aid of certain railroads; and whereas, by reason of a defect in the acts authorizing the issue of said bonds, they have been declared invalid: Now, therefore, for the purpose of carrying into effect the expressed will of the people of said townships:'

"Section 1. Be it enacted by the senate and house of representatives of the state of South Carolina, now met and sitting in general assembly, and by the authority of the same, that the township bonds heretofore issued by county commissioners as the corporate agents of any township in this state in aid of any railroad, by vote of the inhabitants of said township, are hereby declared to be debts of said township respectively having authorized the issue of the same. And the interest and principal thereof shall be paid according to the terms of the said bonds or debt by the assessment, levying, and collection of an annual tax upon the taxable property in said townships, so far as may be necessary, in like manner and by the same county officials as the tax levied for county bonds in aid of railroads is assessed, levied, and collected. Said tax to be known and styled in the tax books as the township railroad tax, and when collected shall be paid over by the treasurer of the county to the holders of said bonds as the interest thereon may become due, and according to the terms thereof. All dividends received by or for said townships on stock in railroad companies which have been aided by the said township bonds or debt shall be applied

by the county commissioners of the county in which said townships are respectively situated primarily towards the payment or retirement of said bonds or debt, and the surplus shall be expended in the improvement of the highways within the territorial limits of said townships.

"Sec. 2. That no tax shall be levied under the provisions of this act to pay the interest on any township bond until the railroad in aid of which they were subscribed shall be completed through such township and accepted by the railroad commissioners, nor shall this act be so construed as to authorize the levy and collection of any tax to pay the interest that may have accrued on such bonds before the completion of such railroad, as provided in this section: provided, that in all townships where taxes have been assessed or collected contrary to the provisions of this act, the county treasurers of the respective counties are hereby required, where such have been paid, to refund the same; and where they have not been paid, to allow a rebate to the extent of such taxes.

"Sec. 3. That this act shall take effect immediately upon its approval. "Approved Dec. 22, 1888." 20 St. at Large, pp. 12, 13.

(9) On April 26, 1893, R. M. Morse, with whom plaintiff is privy, filed his petition in the supreme court of South Carolina against the county commissioners of York county, the official agents of Broad River township, praying a mandamus to them, requiring them to levy a tax for the payment of the matured coupons and interest on bonds of said township, they (the bonds) being held by him. In his petition, after reciting, in substance, the facts heretofore found, he averred that he was the bona fide holder of certain bonds issued by the Broad River township under the circumstances stated. Among these bonds so held by him were the bonds whose coupons are now sued in this action. He claimed his right to the mandamus under the act of 1888, above set forth. The county commissioners, answering the petition, denied all liability upon the bonds because the amount of them was more than 8 per cent. of the taxable value of property in the township at the date of the act of 1888, and so, under the constitution of South Carolina, they (the said bonds) were null and void. This contention was sustained by the supreme court, and the bonds were decreed to be invalid. State v. Cornwell, 40 S. C. 26, 18 S. E. 184. In the discussion of this case it was admitted in the argument and assumed by the court that the bonds were invalid, and that the township was discharged from the obligation, if the case could not be brought within the act of 1888.

(10) The taxable value of property in the township of Broad River when the act providing for subscriptions was passed was $307,085. Eight per cent. of this exceeds $24,000. On October 17, 1885, for the fiscal year ending October 31, 1885, when the vote in favor of subscription was passed, the taxable value of this property was $307,430. Eight per cent. of this exceeds $24,000. In no succeeding year has 8 per cent. of the taxable value of property in this township equaled $24,000.

(11) The cause of action in the present suit is made up of five coupons cut off from each of the bonds numbered 18, 19, 20, 25, 26, 27, 28, 29, 30, and 31, each coupon being for $70, the coupons on each bond being dated consecutively January 1, 1894, 1895, 1896, 1897, and 1898; also five coupons from bond No. 8, for $500, each coupon being for $35, and dated consecutively January 1, 1894, 1895, 1896, 1897, and 1898. The claim is for the aggregate of all these

coupons, to wit, $4,025, and interest on $805 from January 1, 1894, on the same sum from January 1, 1895, on the same sum from January 1, 1896, on the same sum from January 1, 1897, and on the same sum from January 1, 1898, and costs of suit.

## Conclusions of Law.

The bonds from which these coupons are cut, now in possession of the plaintiff, have been pronounced invalid by the supreme court of South Carolina, and the coupons themselves, necessarily, in the hands of the plaintiff, are invalid. Morse, the privy of the plaintiff, of his own motion sought the jurisdiction of the supreme court of South Carolina, and, standing upon the validity of these bonds, then in his possession, sought the aid of the court in collecting the coupons past due thereon. His proceeding was against the county commissioners of York county, who, by the act authorizing the issue of the bonds, are "declared to be the corporate agents of the township." 18 St. at Large, p. 367. The present suit is between Gorham, the privy of Morse, with full notice of that suit, and the Broad River township, the principal of the county commissioners. So the action is between the same parties. The cause of action is on coupons cut from the same bonds as those in the Morse suit, and, as the fact found is that they are coupons from the same bonds, now in plaintiff's possession, their validity depends on the validity of the bonds. Bissell v. Spring Valley Tp., 124 U. S. 234, 8 Sup. Ct. 495, 31 L. Ed. 411. So the cause of action is the same. The supreme court of South Carolina held that the bonds themselves were invalid. So the coupons cut from the same bonds, the bonds being in the hands of the plaintiff, were included in the invalidity of the bonds. The plaintiff has had his day in court. It must be observed that Morse, having selected his jurisdiction, also selected the ground of controversy. The question of the validity of the original subscription and issue of the bonds was involved in his contention, and could have been made by him. In his argument he admitted their invalidity but for the act of 1888. Seeking the aid of the supreme court of South Carolina, voluntarily going into its jurisdiction, standing upon the validity of his bonds, he submitted the question of their validity and received its adjudication. True, the plaintiff now sues on coupons. But they are coupons of the same bonds from which the coupons belonged, whose payment Morse, his privy, then sought. Having the bonds in his possession, he has no peculiar right growing out of the coupons as a separate cause of action. In his proceeding Morse presented himself as bona fide holder of the bonds, and because of such holding he asked that the matured coupons be paid. The supreme court, meeting his position, declared the bonds themselves invalid; thus establishing the invalidity of every coupon thereon attached to them, matured or to mature. Southern Pac. R. Co. v. U. S., 168 U. S. 48, 18 Sup. Ct. 18, 42 L. Ed. 355; Mitchell v. Bank, 180 U. S. 480, 21 Sup. Ct. 418, 45 L. Ed. 631. The plaintiff, his privy, seeking payment of the coupons of the same bonds, now also in his possession, stands in his shoes. The verdict will be for defendant.